UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JOSHUA A. CAMPANY,

                         Plaintiff,                                    6:25-CV-1151
                                                                       (BKS/ML)
v.

ANN MARIE WALKER, Supervisor/Chief
Executive Officer, Rome Memorial Hospital;
and ROME MEMORIAL HOSPITAL,

                         Defendants.

_____

APPEARANCES:                                      OF COUNSEL:

Joshua A. Campany
  Plaintiff, *Pro Se*
C/O Ronald Campany
237 North Street
Oneida, New York 13421

MIROSLAV LOVRIC, United States Magistrate Judge

**<u>ORDER and REPORT-RECOMMENDATION</u>**

        Plaintiff Joshua A. Campany ("Plaintiff") commenced this *pro se* action against

Defendants Anne Marie Walker and Rome Memorial Hospital (collectively "Defendants")

alleging violations of his rights.  (Dkt. No. 1.)  Plaintiff did not pay the filing fee and seeks leave

to proceed *in forma pauperis* ("IFP").  (Dkt. Nos. 5, 6.)  For the reasons set forth below, I (1)

deny Plaintiff's amended IFP application without prejudice, and (2) recommend that the

Complaint be dismissed in its entirety.

## I.    BACKGROUND

Construed as liberally[1] as possible, the Complaint alleges violations of Plaintiff's rights

by Defendants.  (*See generally* Dkt. No. 1.)  More specifically, Plaintiff alleges that at some

unspecified time, he was voluntarily brought to Defendant Rome Memorial Hospital by the

Oneida City Police Department because of suicidal ideations.  (Dkt. No. 1 at 4.)  Plaintiff alleges

that because he was twice denied inpatient psychiatric help, he has now been incarcerated and

"fighting" felony charges "all because [he] was begging for help."  (*Id.*)

Based on these factual assertions, Plaintiff appears to assert the following four claims: (1)

"mental health wrongdoing," (2) "medical wrongdoing," (3) "time & suffering," and (4)

unlawful imprisonment.  (Dkt. No. 1 at 5.)  As relief, Plaintiff seeks "money & freedom."  (*Id.*)

## II.    PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court

without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, 09-

CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2]  "Although an indigent,

incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently

---

[1]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[2]    Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(g).  The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.  *See* http://pacer.uspci.uscourts.gov.  It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, it appears that Plaintiff was incarcerated at the time that he filed the amended IFP application. (Dkt. No. 5.) However, Plaintiff appears to have since been released from Oneida County Jail. (Dkt. No. 14.) A search of VINElink database indicates that Plaintiff is on parole. *See* VINElink, https://vinelink.vineapps.com/person-detail/offender/17054339;tabIndexToSelect=0 (last visited 06/22/2026).[3] Moreover, a search of Oneida County Sheriff's Office Inmate List indicates that Plaintiff is not currently incarcerated in the Oneida County Correctional Facility. Oneida County Sheriff's Office, https://sheriff.oneidacountyny.gov/quick-links/inmate-list/ (last visited 06/22/2026).

Upon a prisoner's release, "his obligation to pay fees is to be determined, like any non-prisoner, solely by whether he qualifies for [IFP] status." *McGann v. Comm'r of Soc. Sec.*, 96 F.3d 28, 30 (1996). "A released prisoner may litigate without further prepayment of fees upon satisfying the poverty affidavit requirement applicable to all non-prisoners." *McGann*, 96 F.3d at 30.

Because Plaintiff is no longer incarcerated, his financial situation may have changed, and the Court is unable to determine whether he established sufficient economic need. *Perez v. Bryant*, 20-CV-0079, 2020 WL 2857156, at *1 (S.D.N.Y. June 2, 2020). As a result, Plaintiff's amended IFP application is denied without prejudice and with leave to renew.[4]

---

[3]    "VINE is the nation's leading victim notification network [which] allows [the general public] . . . to access timely and reliable information about offenders or criminal cases in U.S. jails and prisons." VINE *available at* https://www.vinelink.com/.

[4]    In light of Plaintiff's release from custody, the provisions of 28 U.S.C. § 1915(e) requiring prisoners to pay the filing fee over time from funds available in their inmate accounts

3

Therefore, to the extent that Plaintiff wishes to prosecute this action and proceed IFP, he must submit a second amended IFP application within thirty days of the assigned District Judge's ruling on this Order and Report-Recommendation.  Alternatively, Plaintiff may pay the $405.00 in relevant fees, which includes the $350.00 filing fee and $55.00 administrative fee that applies to litigants who are not proceeding IFP.  If Plaintiff fails to comply with this order within the time allowed, the undersigned may recommend that the assigned District Judge dismiss this action.

## III.   LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

"Ordinarily, my denial of plaintiff's IFP application would end the court's discussion, and [P]laintiff, in light of his *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP.  Because, however, as is discussed more completely below, I find that" Plaintiff's Complaint fails to demonstrate that this Court has subject matter jurisdiction, dismissal is warranted.  *David v. U.S. Envtl. Prot. Agency*, 19-CV-0064, 2019 WL 1004706, at *2 (N.D.N.Y. Jan. 29, 2019) (Peebles, M.J.), *report and recommendation adopted in part*, 2019 WL 1004299 (N.D.N.Y. Mar. 1, 2019) (Hurd, J.).

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

---

are not applicable.  The Clerk of the Court is therefore directed to strike Plaintiff's authorization form (Dkt. No. 6) as unnecessary.

In addition, the Court shall dismiss any action where the complaint fails to allege facts plausibly suggesting subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1988) (holding that subject matter jurisdiction is a "threshold question that must be resolved . . . before proceeding to the merits."); *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 205-06 (2d Cir. 2019) (citing *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014)) ("[b]efore deciding any case on the merits, a district court must determine that it has subject matter jurisdiction over the matter."); *Koziel v. City of Yonkers*, 352 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming *sua sponte* dismissal of complaint on initial review for lack of subject matter); *Talley v. LoanCare Serv., Div. of FNF*, 15-CV-5017, 2018 WL 4185705, at *5 (E.D.N.Y. Aug. 31, 2018) (dismissing on initial review, action challenging state court mortgage foreclosure judgment because the court lacked jurisdiction); *Eckert v. Schroeder, Joseph & Assoc.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005) (citing *Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 881 (2d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)) ("[a] court shall, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter jurisdiction.").

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.   ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed because the Complaint fails to allege facts plausibly suggesting that the Court has subject matter jurisdiction.

Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agric., Inc. v. Perry*, 12-CV-6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust,* 09-CV-7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013)). Federal courts are mandated to examine their own jurisdiction *sua sponte* at every stage of the litigation. *ACCD Global Agric., Inc.*, 2013 WL 840706, at *1; *see In re Tronox, Inc.*, 855 F.3d 84, 85 (2d Cir. 2017) (federal courts have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*).

> A federal court exercises limited jurisdiction pursuant to Article III of the Constitution.  It has subject matter jurisdiction over claims in which: (1) there is a 'federal question' in that a colorable claim arises under the 'Constitution, laws or treaties of the United States,' 28 U.S.C. § 1331; and/or if (2) there is complete "diversity of citizenship" between each plaintiff and all defendants and a minimum of $75,000 in controversy, 28 U.S.C. § 1332.

*Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 511-12 (D. Conn. 2015) (quoting *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000) (delineating two categories of subject matter jurisdiction) (footnote omitted)), *reconsideration denied*, 14-CV-0053, 2015 WL 2124365 (D. Conn. May 6, 2015).

The existence of a federal question is governed by the "well-pleaded complaint" rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. 28 U.S.C. § 1331. A well-pleaded complaint presents a federal question where it "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on a resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983).

Here, the Complaint does not delineate which basis for subject matter jurisdiction it relies on. (*See generally* Dkt. No. 1.) The Complaint is completed on a *pro se* prisoner form complaint and under the "legal basis for complaint" heading on the form complaint—which directs a litigant to identify the federal basis for his/her claims—Plaintiff did not check any of the boxes but wrote on the line intended for "other" that his claim is based on "mental health/medical." (Dkt. No. 1 at 1.) Significantly, Plaintiff did not select that the federal basis for his claims is pursuant to 42 U.S.C. § 1983 or *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 368 (1971). (*Id.*; *see also* Dkt. No. 1, Attach. 1 [Civil Cover Sheet where Plaintiff selected that the nature of his suit is "Personal Injury – Medical Malpractice"].) Thus, Plaintiff appears to invoke subject matter jurisdiction based on diversity of citizenship.

Notwithstanding, there is no diversity of citizenship sufficient to assert jurisdiction in this case pursuant to 28 U.S.C. § 1332. (Dkt. No. 1 at 2 [alleging that Plaintiff is a citizen of New

York State and that Defendants Walker and Rome Memorial Hospital are also citizens of New York State].)

Moreover, even construing the Complaint liberally, Plaintiff does not appear to assert any claims that present a federal question. (*See generally* Dkt. No. 1.) Although Plaintiff appears to assert an unlawful imprisonment claim—which could liberally be construed as a claim pursuant to the Fourth Amendment and 42 U.S.C. § 1983—Plaintiff fails to allege facts plausibly suggesting that Defendants are state actors for purposes of a Section 1983 claim.[5] Instead, the "gist of Plaintiff's case [appears to be] a garden variety state law medical malpractice claim, one which has no business in federal court." *Perkins v. Rome Memorial Hospital*, 20-CV-0196, 2021 WL 1549987, at *5 (N.D.N.Y. Apr. 19, 2021) (Mordue, J.).

As a result, I recommend that Plaintiff's Complaint be dismissed in its entirety.

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when

---

[5]    "It is well-settled that a plaintiff alleging a violation of his constitutional rights under Section 1983 must show that the defendant acted under color of state law." *Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 112 (N.D.N.Y. 2023) (Sannes, C.J.) (citing *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012)); *see also* 42 U.S.C. § 1983 (imposing liability on persons who act "under color of any [state] statute, ordinance, regulation, custom, or usage"). As a general rule private parties are not state actors subject to § 1983 liability. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002); *Reaves v. Dep't of Veterans Affairs*, 08-CV-1624, 2009 WL 35074, at *3 (E.D.N.Y. Jan. 6, 2009) ("Purely private conduct is not actionable under § 1983, 'no matter how discriminatory or wrongful.'") (citation omitted). Indeed, this Court has concluded that Defendant Rome Memorial Hospital and its employees are generally not state actors for purposes of Section 1983. *Perkins v. Rome Memorial Hospital*, 20-CV-0196, 2021 WL 1549987, at *4-5 (N.D.N.Y. Apr. 19, 2021) (Mordue, J.).

8

justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

Plaintiff has "failed to demonstrate that this Court has subject matter jurisdiction, and the undersigned has no plausible basis to conclude that [P]laintiff would be able to establish this Court's jurisdiction through amendment."  *Flores v. Carry-On Trailer*, 25-CV-1731, 2026 WL 1174108, at *5 (N.D.N.Y. Apr. 30, 2026) (Evangelista, M.J.), *report and recommendation adopted*, 2026 WL 1453587 (N.D.N.Y. May 22, 2026) (Nardacci, J.).  Accordingly, it is recommended that the Complaint be dismissed without prejudice and without opportunity to amend.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No. 5) is **DENIED without prejudice and with leave to renew**; and it is further

---

[6]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**ORDERED** that Plaintiff's authorization form (Dkt. No. 6) is **STRICKEN** from the docket as unnecessary; and it is further

**ORDERED** that should Plaintiff wish to proceed with this action, he must either (i) pay the $405.00 filing fee, or (ii) submit a renewed IFP long form application detailing his current post-release financial condition **within thirty (30) days** from the date that the assigned District Judge rules on this Order and Report-Recommendation. Failure to comply with this directive will result in the issuance of a report and recommendation to the assigned district judge that the action be dismissed; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED** **in its entirety** without prejudice and without an opportunity to amend; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this report and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7]

---

[7]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: June 24, 2026
          Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[8]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

⚑   KeyCite Yellow Flag

Declined to Follow by   Consumer Directed Choices, Inc. v. Public Partnerships, LLC,   N.D.N.Y.,   December 4, 2025

2013 WL 840706

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.

ACCD GLOBAL AGRICULTURE

INC. and Curt Meltzer, Plaintiffs,

v.

Alan P. PERRY and Farm Technologies

Network LLC, Defendants.

No. 12 Civ. 6286(KBF).

|

March 1, 2013.

*MEMORANDUM DECISION & ORDER*

KATHERINE B. FORREST, District Judge.

 **\*1**   "The district courts of the United States, as [the Supreme Court has] said many times, are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). In most cases, federal jurisdiction lies either in the cause of action arising under federal law, or in the parties' citizenship being diverse-that is, from different states. While it is clear why federal courts should adjudicate cases implicating federal law, the rationale for so-called "diversity jurisdiction" is more historical. The drafters of the Judiciary Act were concerned that state court judges might employ improper local biases in adjudicating large-dollar cases brought by or against people from foreign States. *See id.* ("In order to provide a neutral forum for what have come to be known as diversity cases, Congress also has granted district courts original jurisdiction in civil actions between citizens of different States .... To ensure that diversity jurisdiction does not flood the federal courts with minor disputes, § 1332(a) requires that the matter in controversy in a diversity case exceed a specified amount, currently $75,000.") One wonders whether the fear of such local biases continues to justify the ability to access the federal courts, especially in light of the expertise one assumes state courts have over the issues of state law raised in diversity

cases—and also in light of the overwhelming number of cases that make it into federal court on diversity grounds. Currently, however, diversity remains an open avenue to the federal courts, and the courts must adjudicate those cases validly brought pursuant to diversity jurisdiction.

That does not mean, however, that federal courts should accept allegations of diversity without investigation-indeed, federal courts are *mandated* to *sua sponte* examine their own jurisdiction at every stage in the litigation:

> Subject-matter jurisdiction can never be waived or forfeited ... [and] if courts become concerned about their own jurisdiction to hear cases, they have an independent *obligation* to ensure that they do not exceed the scope of their jurisdiction, and therefore they *must* raise and decide jurisdictional questions that the parties either overlook or elect not to press.

*Dumann Realty, LLC v. Faust,* 09 Civ. 7651, 2013 WL 30672, at \*1 (S.D.N.Y. Jan.3, 2013) (quotation marks omitted) (citing *Gonzalez v. Thaler,* ——U.S. ——, ——, 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012); *Henderson ex rel. Henderson v. Shinseki,* —— U.S. ——, ——, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011)) (emphasis supplied). This means investigating all aspects of the diversity requirements—not only whether all plaintiffs are completely diverse from all defendants, but also whether the amount in controversy reaches the statutory level.

Here, after having done just that, the Court determines that the requirements for diversity jurisdiction are not met. Plaintiffs ACCD Global Agriculture ("ACCD") and Curt Meltzer sue defendants Alan P. Perry and Farm Technologies Network LLC ("FTN") on claims arising from a soured business collaboration. But almost the entirety of plaintiffs' theory of damages is based on the projected profits lost from the collapse of that collaboration-a collaboration on an unproven business based on sophisticated new science, in an untested foreign market. Such damages require, however, more than the mere assurance from the entity itself that the profits were realizable and realistic—more than the mere *ipsidixit* of "I say I can make that money, therefore I can"—and instead require plaintiffs to eventually establish both the existence

and amount of the profits allegedly lost to a reasonable certainty. *See Schonfeld v. Hilliard,* 218 F.3d 164, 172–75 (2d Cir.2000); *Ho Myung Moolsan, Co. Ltd. v. Manitou Mineral Water, Inc.,* 07 Civ. 7483, 2010 WL 4892646, at *8 (Dec. 2, 2010); *Pot Luck LLC v. Freeman,* 06 Civ. 10195, 2010 WL 908475, at *3 (S.D.N.Y. Mar.8, 2010).

 **\*2**  But plaintiffs' complaint here simply asserts that plaintiffs "would [have made] over $1 million per year in profits"—and makes no other proffer whatsoever concerning that allegation. This is insufficient to support a claim for lost profits, even at the motion to dismiss stage. And without those damages, the complaint does not allege an injury in excess of $75,000. Because plaintiffs have alleged absolutely no facts suggesting that their actual recoverable damages are any more than $12,157.08—far below the $75,000 required for diversity jurisdiction to lie—the Court lacks jurisdiction over this action and must dismiss it.

Accordingly, the Court dismisses this action *sua sponte* without prejudice, and denies defendants' motion to dismiss as moot.

BACKGROUND

The following facts are drawn from the First Amended Complaint (the "FAC"), the documents attached thereto, and the documents incorporated therein, and are construed in the light most favorable to plaintiffs. *Policemen's Annuity & Benefit Fund of City of Chicago v. Bank of Am., NA,* —— F.Supp.2d ——, 2012 WL 6062544, at *1 (Dec. 7, 2012).

### *The Parties and the Dispute*
Plaintiff ACCD is an agricultural technologies company targeting international farming markets, and specifically China. (FAC ¶ 9.) Plaintiff Meltzer is the president, CEO, and a director of ACCD. (*Id.* ¶ 2.) Collectively as shareholders, Meltzer formed ACCD with defendant Perry, and two other individuals not involved in this lawsuit. (*Id.* ¶¶ 11, 16, 17.) Perry had worked in "crop production ... farming, agronomy, and soil sciences" for four decades, and served as vice president, treasurer, and a director of ACCD. (*Id.* ¶¶ 10, 11, 16, 18.) Perry was and is also the sole member and owner of defendant FTN—another soil sciences company. (*Id.* ¶¶ 12, 13.)

Meltzer had initially sought to pursue a business enterprise with Perry because of Perry's representations concerning his soil sciences expertise. (*See id.* ¶¶ 10, 13–15.) Specifically, Perry told Meltzer that his and FTN's soil science technology allowed for significant production improvements over regular farming techniques. (*Id.* ¶¶ 13–15.) [1] But Perry "failed to provide supporting data to ACCD" to back up his representations, and—allege plaintiffs—those representations "were not accurate." (*Id.* ¶ 13; *see also id.* ¶¶ 14, 15.) Despite Perry's failure to provide ACCD with data, ACCD still "projected that one farm of 5,000 acres ... with Perry's alleged expertise ... would generate over $1 million per year in profits." (*Id.* ¶ 38.) The FAC contains no factual support or data whatsoever concerning the more-than-$1 million per-year-per-farm profits projected by ACCD.

In May 2011, Meltzer and Perry, and others, formed ACCD through execution of a "Shareholders Agreement." (*Id.* ¶ 11; *see also id.* Ex. 1 (the "Shareholders Agreement").) That agreement contained provisions, *inter alia:*

  **\*3**  • Requiring that Perry-and the other shareholders—devote "commercially reasonable" time to ACCD (Shareholder Agreement ¶ 7);

• Requiring that Perry license the FTN technology to ACCD for $1.00 per year—until such time as ACCD "accept[s] its initial funding," at which point requiring that Perry sell the technology to ACCD for $1.00, which would then license the technology to FTN for $1.00, provided that FTN use the technology only domestically (*id.* ¶ 8); and

• Requiring that a departing shareholder not compete with ACCD for two years, but permitting Perry to run FTN domestically provided he had no contact with ACCD's customers (*id.* ¶ 20).

By late 2011, however, the relationship between Meltzer and Perry had broken down. Perry allegedly interfered in various ways in ACCD's operations, (*see* FAC ¶¶ 23–27), and eventually resigned in December 2011. (*Id.* ¶ 28.) Due to that resignation, ACCD was denied "Perry's alleged expertise and his involvement and active participation." (*Id.* ¶ 38.) Accordingly, ACCD was alleged denied the projected more-than-$1 million per-year-per-farm profits the Meltzer/Perry collaboration would have generated.

### *Facts Relating to Diversity Jurisdiction and Damages*

Diversity jurisdiction in cases with domestic parties requires that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states." 28 U.S.C. § 1332(a)(1). The parties on one side of the litigation must be completely diverse from the parties on the litigation's other side—that is, "no plaintiff can be a citizen of the same state as a defendant." *Aurora Loan Servs. LLC v. Sadek,* 809 F.Supp.2d 235, 239 (S.D.N.Y.2011).

There is no dispute in this case that all plaintiffs are fully diverse from all defendants—plaintiffs are citizens of New York, and defendants are citizens of Maine. (FAC ¶¶ 1–4.)

There is also no present dispute amongst the parties as to the amount in controversy—defendants do not raise the issue in their pending motion to dismiss. But, the court's "independent obligation to ... raise and decide jurisdictional questions that the parties either overlook or elect not to press," *Henderson,* 131 S.Ct. at 1202, requires that the Court examine the FAC's damages allegations on its own.

Plaintiffs' allegations concerning injury, harm, or otherwise suggesting damages, are—*in toto*—the following:

- Perry interfered with ACCD's operations in late 2011 by (1) impeding ACCD's "testing efforts"; (2) failing to pursue business opportunities in Mexico; (3) failing to pursue "citrus greening trials"; (4) "pull[ing]" an employee off an ACCD project; (5) "hav[ing] private conversations with" another employee [2] ; and (6) "fail[ing] to set up private meetings for Meltzer with ... industry leaders." (FAC ¶¶ 23–26.) There is not a single allegation as to how these alleged harms affected ACCD, either in terms of dollar amounts or in terms of practical consequences.

**\*4**  - Perry told Meltzer that Meltzer should restructure ACCD, however "Perry was not committed to the" restructuring, and "the restructuring was never completed." (*Id.* ¶¶ 34–35.) What affect this had on ACCD or Meltzer, in terms of dollars, is not alleged.

- Perry and FTN have been competing with ACCD in violation of the Shareholders Agreement. (*Id.* ¶¶ 36–37.) What affect this has had on ACCD or Meltzer, in terms of dollars or in terms of practical consequences, is not alleged.

- Meltzer "advanced" certain sums to Perry totaling $12,157.08 for certain business and personal expenses. Perry never paid Meltzer back. (*Id.* ¶¶ 31–33.)

- Due to Perry's alleged wrongful refusal to continue working with Meltzer and ACCD, ACCD has been unable to achieve its business plans. Specifically, "ACCD [had] projected that one farm of 5,000 acres under its management ... which [was] denied to ACCD by Perry's misconduct ... would generate over $1 million per year in profits to ACCD. Thus, ACCD's damages for its lost profits due to Perry's and FTN's misconduct are well in excess of $1 million." (*Id.* ¶ 38.)

### *Procedural History*

ACCD and Meltzer initially sued Perry and FTN on August 16, 2012. (ECF No. 1.) Defendants moved to dismiss, but before the Court ruled on that motion, plaintiffs filed the current FAC on October 12, 2012. (ECF No. 11.) Defendants then filed the current motion on October 26. That motion seeks dismissal of five of the FAC's seven counts—all on Rule 12(b)(6) grounds. (*See* ECF No. 13.) Shortly thereafter, on December 12, 2012, this action was transferred from Judge Barbara S. Jones to the undersigned. (ECF No. 17.)

### DISCUSSION

### *Legal Standards*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2000); *see Williams v. Skyline Auto. Inc.,* 11 Civ. 8318, 2012 WL 1965334, at \*2 (S.D.N.Y. May 24, 2012). To survive a Rule 12(b)(1) challenge to the Court's subject matter jurisdiction, the plaintiff must "allege facts that affirmatively and plausibly" suggest that jurisdiction exists. *Amidax Trading Grp. v. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir.2011); *see GMA Accessories, Inc. v. Dorfman–Pacific Co., Inc.,* 11 Civ. 3731, 2012 WL 899385, at \*3 (March 16, 2012) (dismissal is proper "when the complaint fails to allege sufficient allegations to support subject matter jurisdiction"). The Court draws all well-pleaded facts from the complaint— and the documents attached thereto and incorporated therein —assumes such facts to be true, and construes reasonable inferences in the plaintiffs' favor. *Amidax,* 671 F.3d at 145.

The constitutional and statutory basis for jurisdiction in a diversity case such as this one is found in 28 U.S.C. § 1332. That section requires that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states." 28 U.S.C. § 1332(a)(1).

### Lost Profits Damages

**\*5** The only injury or damages alleged by the FAC, other than ACCD's lost profits, consists of the $12,157.08 Meltzer allegedly loaned or advanced Perry that Perry never paid back. Otherwise, the only damages articulated by plaintiffs are the "in excess of $1 million" of lost profits based on ACCD's alleged "project[ion] that one farm of 5,000 acres ... would generate over $1 milion per year in profits." (*See* FAC ¶¶ 31–33, 38.)

A plaintiff may recover lost profits "only if he can establish both the existence and amount of such damages with reasonable certainty. The damages may not be merely speculative, possible or imaginary ... and must be capable of measurement based upon known reliable factors without undue speculation." *Schonfeld,* 218 F.3d at 172 (quotation marks and citations omitted). Thus, a party claiming lost profits must eventually prove that it would have been able to pursue its business venture on the price, cost, and quantity terms it contemplates. *See Ho Myung Moolsan,* 2010 WL 4892646, at \*8. "A court should be hesitant ... to rely on stated assumptions as to the" operating success of a proposed business venture. *Id.; see Dupont Flooring Sys., Inc. v. Discovery Zone, Inc.,* 98 Civ. 5101, 2004 WL 1594629, at \*7 (S.D.N.Y. July 14, 2004) ("Courts repeatedly have rejected claims for lost profits that rest on a series of assumptions and projections.") (quotation marks omitted; collecting cases); *Coastal Aviation. Inc. v. Commander Aircraft Co.,* 937 F.Supp. 1051, 1070 (S.D.N.Y.1996) ("To award plaintiff lost profits based on the unproven assumption that it would have [succeeded in its business ventures] would unjustly reward plaintiff rather than make it whole.")

Moreover, "evidence of lost profits from a new business venture receives greater scrutiny because there is no track record upon which to base an estimate." *Schonfeld,* 218 F.3d at 172. Thus, "[p]rojections of future profits based upon a multitude of assumptions that require speculation and conjecture and few known factors do not provide the requisite certainty." *Id.; see Robin Bay Assocs., LLC v. Merrill Lynch & Co.,* 07 Civ. 376, 2008 WL 2275902, at \*7 (S.D.N.Y.

June 3, 2008) ("the obvious reason [is] that there does not exist a reasonable basis of experience upon which to estimate lost profits"). Indeed, for 100 years, the New York Court of Appeals has been "reluctant" to award lost profits in cases involving new business ventures. *See Cramer v. Grand Rapids Show Case Co.,* 223 N.Y. 63, 119 N.E. 227, 228–29 (N.Y.1918).[3]

Finally, if sought on breach of contract claims,[4] plaintiff must additionally eventually prove that "lost profit damages," specifically, "were within the contemplation of the parties when the contract was made." *Schonfeld,* 218 F.3d at 172; *Robin Bay,* 2008 WL 2275902, at \*7 ("To recover lost profits the plaintiff must show both that the alleged loss is capable of proof with reasonable certainty and that the damages were fairly within the contemplation of the parties.").

**\*6** "Though courts often address the issue of lost profits at the summary judgment stage, New York courts have dismissed claims for lost profits where the pleadings suggest that an award of lost profits would require an unreasonable level of speculation." *Robin Bay,* 2008 WL 2275902, at \*7 (on motion to dismiss, dismissing claims for lost profits arising from proposed construction of a casino in St Croix because "court would have to assume" that plaintiff would obtain funding to purchase land, secure proper licenses, complete construction, and operate the business profitably, when the industry was "in its infancy");[5] *see also Pot Luck,* 2010 WL 908475, at \*3 (on motion to dismiss, dismissing claims for lost profits arising from proposed distribution of film in certain regions because such claims would require the court to assume the existence of markets in those regions, the terms of any distributorship agreements in those regions, the efforts of retained distributors, and the effectiveness of those efforts); *Calip Dairies, Inc. v. Penn Station News Corp.,* 262 A.D.2d 193, 194, 695 N.Y.S.2d 70 (1st Dep't 1999) ("The cause of action for lost profits was also properly dismissed [on motion to dismiss under N.Y. C.P.L.R.] because the profits alleged to have been lost could not be determined with a reasonable degree of certainty."); *Lama Holding Co. v. Smith Barney Inc.,* 215 A.D.2d 314, 315, 627 N.Y.S.2d 33 (1st Dep't 1995; *676 R.S.D. Inc. v. Scandia Realty,* 195 A.D.2d 387, 387, 600 N.Y.S.2d 678 (1st Dep't 1993).

There is not a single allegation in the FAC in the case at bar suggesting that ACCD would ever have been profitable in China or the other international farming markets the FAC alleges were its targets. (*See* FAC ¶ 9.) As a preliminary matter, the Court notes that such allegations-well-pleaded,

and with support—should not have been or be difficult for plaintiffs to produce. Indeed, it is *plaintiffs'* business whose profits are alleged to have been destroyed. It is there *plaintiffs* who should have the records and models and projections—without any need for discovery, or any other process—to support any allegations that ACCD would have made the many millions in lost profits that plaintiffs claim.

But there is no allegation that ACCD could acquire land in China on which to operate any farms; nor that ACCD could acquire any Chinese legal rights or licenses to operate the farms; nor that technologically-advanced farming in China is even possible, practically or legally; nor that ACCD could build the farms; nor that ACCD could find laborers with the necessary experience with technologically-advanced farming; nor that ACCD could find laborers at all; nor that the FTN farming techniques would be effective.

Nor is there any well-pleaded allegation even that ACCD could operate the farms profitably. Indeed, there is no allegation that ACCD or Meltzer had ever been successful in any venture similar to ACCD. And while the FAC alleges that Perry told Meltzer that Perry had had success in prior similar ventures, the FAC *specifically alleges that Perry was lying when he made those representations.* (*See* FAC ¶¶ 13–15.) It seems odd to accuse an individual of lying about his credentials and, in the very next breath, claim damages based—essentially—solely on the withheld expertise of that individual. Likewise, the Court cannot—and will not—assume the effectiveness and profitability of unproven farming techniques that plaintiffs themselves allege were not as effective as they were represented to be.

**\*7** In the absence of well-pleaded allegations supporting any of the facts listed above, "there is simply no basis for the court to determine lost profits at this point or any other stage of the litigation because such a calculation would require a high degree of speculation." *Robin Bay,* 2008 WL 2275902, at \*8. Indeed, "a high degree of speculation" puts it lightly.

Plaintiffs' damages claims based on ACCD's alleged lost profits are therefore dismissed. The FAC is thus left with a claim for $12,157.08 in money Meltzer advanced Perry, which Perry never repaid. But this is below the $75,000 threshold required by 28 U.S.C. § 1332(a). Accordingly, the Court lacks subject matter jurisdiction and must dismiss this action.

## CONCLUSION

For the reasons stated above, plaintiffs' FAC is dismissed. This dismissal is *without prejudice,* and plaintiffs are hereby granted leave to file a second amended complaint not later than March 11, 2013.

Defendants' motion to dismiss is denied as moot.

The Clerk of the Court is directed to terminate the motion at ECF No. 12.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 840706

---

**Footnotes**

1    Perry allegedly told Meltzer that his and FTN's technology provided (1) "at least a 30% increase in production for nearly every crop ... for 15 years"; (2) "crop yields of 20% to 100% over the traditional N, P, K fertilizer program; and (3) "high end yield increases (of up to over 120%) for 11 different crops." (FAC ¶¶ 13–15.)

2    The content of those conversations is not alleged.

3    "I have pointed out the limited business experience of plaintiffs, the fact that the enterprise was an adventure in a locality where neither one of them had before been engaged in business. No doubt the plaintiffs entertained hope that the business venture upon which they were about to embark would prove successful. Such expectation was evidently based upon a consideration of the resident population of the city of Amsterdam, the business activity of the residents of that city, and the number and character of competitors in the same

general line of business. Plaintiffs, however, had no assurance that the venture would not prove to be a failure. At the time the contract was made they had the lease of a vacant unfinished store. They had not as yet purchased goods, placed goods on sale, or secured one customer. They had before them the labor of building up a new business. Nevertheless, the courts below have held that plaintiffs may recover for the breach of the contract such an amount of profits as they would have made had they not been prevented from starting in business, such damages not to be based upon a business theretofore carried on, but measured by profits during a period of time corresponding to the period of interruption one year later. Therein material error was committed.

...

A distinction exists between the interruption of an established business and a new venture. The owner of an established business may have it in his power to establish with reasonable certainty the amount of capital invested, the monthly and yearly expenses of operating his business, and the daily, monthly, or yearly income he derived from it for a long time prior thereto and for the time during which the interruption of which he complains continued, thereby furnishing a reasonably correct estimate of the nature of the legal injury and the amount of damages which resulted therefrom. While evidence of such facts may be admissible they must not be uncertain or problematical. The requirement imposed upon one whose business has been established and interrupted cannot be enforced as to him and made less stringent to one embarking in a new business who cannot furnish data of past business from which the fact that anticipated profits would have been realized can be legally deduced." 119 N.E. at 228–29 (internal citations omitted).

4    Plaintiffs' FAC lists seven counts—some of which are plead "in the alternative" from each other—including one for breach of contract. Because no count includes a statement of the damages arising from that count, it is impossible for the Court to determine what damages claims are linked to which legal counts.

5    Indeed, the *Robin Bay* case is particularly instructive because there—like in the case at bar—the party against whom lost profits were claimed acted in the venture as an adviser without whom the venture could not proceed for lack of the venturers' expertise. Moreover, like this case, the claims in that case arose under contract, negligence, and fiduciary duty theories. *See* 2008 WL 2275902, at ——1–2, 7–8.

---

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 6:25-cv-01151-BKS-ML   Document 15   Filed 06/24/26   Page 19 of 71

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

### CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

### ORDER and REPORT–RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

### BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:25-cv-01151-BKS-ML Document 15 Filed 06/24/26 Page 21 of 71

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that

defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

## Footnotes

1      I note, however, that the report-recommendation would survive even *de novo* review.

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION*[1]

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants —Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous,

malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson*[3] *v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

    - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status

on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

- Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009).[4]

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury,

or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS *WILL* RESULT IN A WAIVER OF OBJECTIONS AND *WILL* PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

## Footnotes

[1]    At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

[2]    Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

[3]    It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

4    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

5    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Red Flag

Report and Recommendation Adopted in Part, Rejected in Part by David v. U.S. Environmental Protection Agency, N.D.N.Y., March 1, 2019

2019 WL 1004706
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

DAVID f/k/a David J. Forjan, Plaintiff,
v.
The U.S. ENVIRONMENTAL
PROTECTION AGENCY, et al., Defendants.

Civil Action No. 3:19-CV-0064 (DNH/DEP)
|
Signed 01/29/2019

**Attorneys and Law Firms**

FOR PLAINTIFF: DAVID, Pro Se, 2633 State Route 17C, Barton, NY 13734.

ORDER, REPORT, AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE JUDGE

**\*1** *Pro se* plaintiff David f/k/a David J. Forjan brings this citizen suit against the United States Environmental Protection Agency ("EPA") and three high ranking officials employed by that agency, alleging violations of, *inter alia*, the Toxic Substances Control Act, *see* 15 U.S.C. § 2601, *et seq.*, the Clean Water Act, *see* 33 U.S.C. § 1251, *et seq.*, the Clean Air Act, *see* 42 U.S.C. § 7401, *et seq.*, and the Food Quality Protection Act, [1] *see* Pub. L. No. 104-170, 110 Stat. 1489. Accompanying plaintiff's complaint is a motion requesting permission to proceed in the action *in forma pauperis* ("IFP"). For the reasons set forth below, plaintiff's IFP application is denied, and I recommend that his complaint be dismissed, with leave to replead.

I. BACKGROUND

Plaintiff commenced this action on January 17, 2019. Dkt. No. 1. Although plaintiff denominated his action as arising under 42 U.S.C. § 1983, it is clear from his lengthy—and at times nonsensical—complaint that he is attempting to bring a citizen suit to enforce various environmental laws and regulations. *See generally* Dkt. No. 1.

Plaintiff alleges that there is a "probability" that he and his dog, Annie, are being poisoned by the widespread use of pesticides, herbicides, and other chemical agents, which have been, and continue to be, approved for the public's use by defendants, the United States EPA; Andrew Wheeler, Acting Administrator of the EPA; Richard Keigwin, Jr., Director of the EPA's Office of Pesticide Program; and Peter D. Lopez, Regional Administrator of the EPA. *See generally id.* Plaintiff seeks declaratory and injunctive relief. *Id.* at 15-16.

II. DISCUSSION

A. Plaintiff's IFP Application

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). [2] A court is authorized, however, to permit a litigant to proceed IFP if it determines that he or she is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1).

" 'The purpose of [section] 1915 is to insure that litigants will not be deprived of access to the judicial system because of their financial circumstances.' " *Naik v. Modern Mktg. Concepts, Inc.*, No. 3:17-CV-0613, 2017 WL 9509955, at \*1 (N.D.N.Y. Sept. 19, 2017) (Peebles, M.J.) (quoting *Monti v. McKeon*, 600 F. Supp. 112, 114 (D. Conn. 1984) ); *see also Harlem River Consumers Coop, Inc. v. Associated Grocers of Harlem, Inc.*, 71 F.R.D. 93, 96 (S.D.N.Y. 1976). "The decision of whether to grant an application to proceed IFP rests within the discretion of the court. *Naik*, 2017 WL 9509955, at \*1 (citing *Monti*, 600 F. Supp. at 113).

**\*2** Section 1915(a)(1) does not set financial guideposts for determining IFP eligibility, but provides that IFP status may be granted when the court is satisfied "that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1); *see also Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) ("We think an [IFP application] is sufficient which states that one cannot because of his poverty pay or give security for the costs and still be able to provide himself and dependents with the necessities of life." (quotation marks and alteration omitted) ). A plaintiff does not need to demonstrate abject poverty to qualify for IFP status. *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (citing *Adkins*, 335 U.S. at 339); *accord Lee v. McDonald's Corp.*, 231 F.3d 456, 458 (8th Cir. 2000). Indeed, "no party must be made to choose between abandoning a

Case 6:25-cv-01151-BKS-ML    Document 15    Filed 06/24/26    Page 29 of 71

David v. U.S. Environmental Protection Agency, Not Reported in Fed. Supp. (2019)

potential meritorious claim or foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

In this instance, plaintiff's IFP application sets forth a somewhat murky financial picture. Plaintiff indicates that he is self-employed from his New York residence, but does not disclose that he receives any income from that self-employment. Dkt. No. 2 at 1. After failing to complete several questions regarding his sources of income over the past twelve months, plaintiff indicates that he receives $1,868 per month in disability and workers' compensation benefits, which is nearly double the amount of the current poverty income threshold level as reflected in the guidelines published by the U.S. Department of Health and Human Services.[3] *Id.*

Plaintiff's application does not disclose any extraordinary or unusual expenses, debts, or financial obligations, other than ordinary cost-of-living expenses, such as property taxes, utilities, insurance, and food. Dkt. No. 2 at 2. Although plaintiff's regular monthly expenses exceed his monthly income, in part due to a moderate amount of credit card debt and a small loan, in his application, he discloses that he possesses $27,000 in savings and $65,000 in other assets, including a home in New Mexico. *Id.* at 2. Plaintiff, who in his complaint alleges that he resides in New York, does not indicate in the IFP application whether his New York home is among his assets or whether he has any expenses associated with that residence. *See generally id.*

In this instance, despite some unanswered questions regarding plaintiff's finances, I find that he possesses sufficient funds to pay the $400.00 filing fee to commence this action without "foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339). Accordingly, I will deny plaintiff's motion to proceed in the case IFP. To the extent plaintiff may wish to renew his request to proceed IFP, and given the court's unanswered questions about his financial situation, any request to proceed without prepayment of fees must include a fully completed long form *in forma pauperis* application (AO 239).

### B. Plaintiff's Complaint

#### 1. Standard of Review

Ordinarily, my denial of plaintiff's IFP application would end the court's discussion, and plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP. Because, however, as is discussed more completely below, I find that plaintiff's complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915 requires that the court dismiss the action "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]" 28 U.S.C. § 1915(e).

**\*3** Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) ) (quotation marks and emphasis omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations of a complaint in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) ).

### 2. Analysis of Claims Against Defendants Wheeler, Keigwin, and Lopez

**\*4** As was noted above, a pleading must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief" Fed. R. Civ. P. 8(a)(2). As a result, when a complaint names a defendant in the caption, "but contains no allegations indicating how the defendant violated the law or injured the plaintiff," any claims against that defendant are subject to dismissal. *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (quoting *Morabito v. Blum*, 528 F. Supp. 252, 262 (S.D.N.Y. 1981) ); *Gilfus v. Adessa*, No. 04-CV-1368, 2006 WL 2827132, at \*4 (Sept. 30, 2006) (Munson, J.).

Here, beyond naming defendants Wheeler, Keigwin, and Lopez in the caption and first paragraph of his complaint, *see* Dkt. No. 1 at 1-2, plaintiff has failed to set forth any

factual allegations as to those defendants. In the absence of the requisite specificity with respect to how each defendant violated the law or caused damage to plaintiff, the court recommends that the complaint be dismissed against those defendants.

### 3. Analysis of Claims Against the EPA

Plaintiff's complaint is comprised of forty-four pages and 228 paragraphs of incoherent prose and data culled from news articles regarding the use of pesticides and other chemical agents. By way of one example, in the "[i]ntroduction" section of the complaint, plaintiff alleges as follows:

> [¶ 4] Father says, be still and know that I am God,
>
> Father says, be still and be filled with my peace,
>
> Father says, be still and know that I am the Lord,
>
> Father says, and remain hereafter within me.
>
> Father says, I created everything.
>
> Father says, like Insects and Birds and Frogs and Rabbits and Possums and Owls and Hawks and Eagles and pets and human Children.
>
> Father says, l created everything.
>
> Father says, they are all my children.

> [¶ 5] Father says, Defendants are endangering and killing them all. Father says, with pesticides. Father says, your Honor, we must stop allowing the use of pesticides. Father says, your Honor, pesticides are poisons.

> [¶ 6] Father says, your Honor, Birds and Frogs eat the poisoned Insects, and the more they eat, the more the poisons accumulate in them, and the poisons kills them too. Father says, your Honor, bigger Birds and Mammals, including some pets, sometimes eat poisoned Birds and Frogs, and Rabbits eat poisoned grasses and plants, and that poison accumulates in them, or your pets, and will harm and kill them. Father says, your Honor, like the Raptors and Earth-bound Mammals that eat poisoned Frogs and Birds, that poison kills them too.

Dkt. No. 1 at 2 (errors in original). Thereafter, in a 130-paragraph factual "addendum" to the complaint, *see* Dkt. No. 1 at 17-44, plaintiff alleges:

Case 6:25-cv-01151-BKS-ML    Document 15    Filed 06/24/26    Page 31 of 71

David v. U.S. Environmental Protection Agency, Not Reported in Fed. Supp. (2019)

[¶ 1] It is startling to see how heavily strawberries are contaminated with residues of hazardous pesticides, but even more shocking is that these residues don't violate the weak U.S. laws and regulations on pesticides in food, said Sonya Lunder, EWG Senior Analyst. The EPA's levels of residues allowed on produce are too lax to protect Americans' health. They should be updated to reflect new research that shows even very small doses of toxic chemicals can be harmful, particularly for young children.

[¶ 2] This study is one of many that shows we know very little about the repercussive effects of pesticides once released into the environment, said Ruth Kerzee, executive director of the Midwest Pesticide Action Center, who was not involved in the study, We are told these compounds break down rapidly when exposed to sunlight and, yet, this study shows persistence in the environment long after applications.

**\*5** [¶ 3] Sidelined (U.S. EPA) children's health official Dr. Ruth Etzel says EPA under Trump believes kids are disposable, they don't matter - CBS News[.]

Dkt. No. 1 at 17 (internal quotation marks omitted).

Although certain citizen enforcement suits are permissible against the EPA, as the complaint is currently drafted, the court is unable to meaningfully analyze, in accordance with 28 U.S.C. § 1915(e), whether and to what extent plaintiff has pleaded a colorable claim against the EPA. [4] *See generally* Dkt. No. 1. Plaintiff's prolix pleading places an unjustified burden on the court " 'to select the relevant material from a mass of verbiage.' " *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1988) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969) ).

Accordingly, I recommend the complaint be dismissed as frivolous. *See, e.g., Gillich v. Shields*, No. 18-CV-0486, 2018 WL 2926299 (N.D.N.Y. Apr. 30, 2018) (Peebles, M.J.), *report and recommendation adopted by* 2018 WL 2926302, at \*3 (N.D.N.Y. Jun. 8, 2018) (D'Agostino, J.); *Canning v. Hofmann*, No. 15-CV-0493, 2015 WL 6690170, at \*5 (N.D.N.Y. Nov. 2, 2015) (Hurd, J.) ("Under these circumstances, having found that none of the allegations in Plaintiff's meandering and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal."); *see also*

*Salahuddin*, 861 F.2d at 42 ("Dismissal [for failure to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure] ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.").

C. Whether to Permit Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

**\*6** In this case, it is not clear whether better pleading would permit plaintiff to assert a cognizable cause of action against the EPA. Out of deference to his *pro se* status, however, I recommend that plaintiff be granted leave to amend his complaint.

If plaintiff chooses to avail himself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). In addition, the amended complaint must include allegations reflecting how the individuals named as defendants are involved in the allegedly unlawful activity. Finally, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See*

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted) ).

III. <u>SUMMARY, ORDER, AND RECOMMENDATION</u>
For the reasons set forth above, it is hereby

ORDERED that plaintiff's *in forma pauperis* application (Dkt. No. 2) is DENIED without prejudice. In the event this report is adopted and plaintiff is granted leave to amend his complaint, any amended complaint must be accompanied by either (1) the full filing fee or (2) a new request to proceed in this action without prepayment of the filing fees in the form of a completed AO 239; and it is further respectfully

RECOMMENDED that plaintiff's complaint (Dkt. No. 1) be DISMISSED, with leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[5] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1004706

---

**Footnotes**

1    The Food Quality Protection Act amended both the Federal Food, Drug, and Cosmetic Act, *see* 21 U.S.C. § 301, *et seq.*, and the Federal Insecticide, Fungicide and Rodenticide Act, *see* 7 U.S.C. § 136, *et seq.*

2    The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3    Those guidelines reflect that effective January 11, 2019, for an individual residing within the forty-eight contiguous states and the District of Columbia, the threshold is $12,490. U.S. Dep't of Health & Human Servs., *Poverty Guidelines*, https://aspe.hhs.gov/poverty-guidelines (last visited Jan. 24, 2019).

4    For example, the citizen suit provision of the Clean Water Act enables citizens to bring suit to force the Administrator of the EPA to perform non-discretionary duties. 33 U.S.C. § 1365(a)(2); *see generally Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992). Here, plaintiff simply alleges that the EPA has violated the spirit of the Clean Water Act because there is a probability that he and his dog are being poisoned by the widespread chemical agents. As a result, it is not clear from plaintiff's complaint what mandatory duty he alleges that the EPA has allegedly failed to perform pursuant to the Clean Water Act.

     As a separate issue that is beyond the scope of this order, report, and recommendation, I note that citizen enforcement suits under the Toxic Substances Control Act, the Clean Water Act, and the Clean Air Act are each subject to certain pre-suit notice requirements. 15 U.S.C. § 2619(b)(2) (Toxic Substances Control Act); 33 U.S.C. § 1365(b)(2) (Clean Water Act); 42 U.S.C. § 7604(b)(2) (Clean Air Act). There is no indication in plaintiff's complaint that he has met those requirements.

5    If you are proceeding pro se and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the

report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                                        © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**2019 WL 1004299**
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

DAVID, Previously and Legally Known as David J. Forjan, Formerly Known as David J. Forjan, Plaintiff,

v.

The U.S. ENVIRONMENTAL PROTECTION AGENCY; Andrew Wheeler, Acting Administrator, U.S. EPA; Richard Keigwin, Jr., Director, U.S. EPA Office of Pesticide Programs; and Peter D. Lopez, Regional Administrator, U.S. EPA, Defendants.

3:19-CV-64 (DNH/DEP)
|
Signed 02/28/2019
|
Filed 03/01/2019

**Attorneys and Law Firms**

DAVID, Plaintiff pro se, 2633 State Route 17C, Barton, NY 13734.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

**\*1** Pro se plaintiff David, previously and legally known as David J. Forjan, and formerly known as David J. Forjan, brought this civil action against the United States Environmental Protection Agency and three high ranking officials employed by that agency. On January 29, 2019, the Honorable David E. Peebles, United States Magistrate Judge, advised by Report-Recommendation that plaintiff's complaint be dismissed but that he be granted leave to replead. Plaintiff has filed timely objections to the Report-Recommendation.

Based upon a de novo review of the portions of the Report-Recommendation to which plaintiff objected, the Report-Recommendation is accepted in part and rejected in part. See 28 U.S.C. § 636(b)(1). Generally, when the court dismisses a pro se complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993). Here, any amendment would be futile and no amendment will be permitted. The complaint will be dismissed in its entirety.

Therefore, it is

ORDERED that

The complaint is DISMISSED in its entirety.

The Clerk is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1004299

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 30672
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

**DUMANN REALTY**, **LLC**, Profitechnic Limited,
**LLC**, Lawrence Luk and Mac Luk, Plaintiffs,
v.
Frederick **FAUST**, Defendant/Counterclaim Plaintiff,
v.
**Dumann Realty**, **LLC**, Richard Du and
Mac Luk, Counterclaim Defendants.

No. 09 Civ. 7651(JPO).
|
Jan. 3, 2013.

*MEMORANDUM AND ORDER*

J. PAUL OETKEN, District Judge.

**\*1** **Dumann Realty**, **LLC** ("**Dumann**" or "the **LLC**"), Profitechnic Capital Limited ("Profitechnic"), Lawrence Mac ("Mac"), and Mac Luk (together, "Plaintiffs") brought this action against **Dumann** member Frederick **Faust** ("**Faust**" or "Defendant") asserting nine claims under New York State Law, including breach of **Dumann's** Operating Agreement and breach of the common law duty of good faith and fair dealing. **Faust** has filed several counterclaims against Plaintiffs, also under New York law.

Defendant has filed a motion for summary judgment, which is now fully briefed. However, this Court has determined that it lacks subject matter jurisdiction over this matter, and thus must dismiss this case *sua sponte,* without reaching the merits of Defendant's motion.

**I. Subject Matter Jurisdiction**
"The district courts of the United States ... are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.' " *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). "Plaintiffs bear the burden of showing by a preponderance of the evidence that subject matter

jurisdiction exists. [J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter,* 343 F.3d 619, 623 (2d Cir.2003) (internal quotation marks and citations omitted; alteration in original).

"Subject-matter jurisdiction can never be waived or forfeited. The objections may be resurrected at any point in the litigation, and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety." *Gonzalez v. Thaler,* —— U.S. ——, ——, 132 S.Ct. 641, 648, 181 L.Ed.2d 619 (2012). Moreover, if courts become concerned about their jurisdiction to hear cases, they have "an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Hernandez ex rel. Hernandez v. Shinseki,* —— U.S. ——, ——, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011) (citation omitted); *see also Alliance of American Insurers v. Cuomo,* 854 F.2d 591, 605 (2d Cir.1988) (stating that "a challenge to subject matter jurisdiction cannot be waived and may be raised *sua sponte* by the district court" (citation omitted)). To be sure, if it is determined late in the life of a case that no subject matter jurisdiction exists, "many months of work on the part of the attorneys and the court may be wasted." *Henderson,* 131 S.Ct. at 1202. This, however, is a modest price to pay for the continued preservation of federalism. *Accord Mansfield, C. & L.M. Ry. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884) (explaining that the rules governing subject matter jurisdiction "spring[ ] from the nature and limits of the judicial power of the United States" and are therefore "inflexible and without exception").

**II. Diversity Jurisdiction in Cases Involving Limited Liability Companies**
**\*2** In their Second Amended Complaint, Plaintiffs allege that "[t]his Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 based upon the diversity of citizenship of each of the parties and the amount in controversy." (Second Amended Complaint at ¶ 11.) Under 28 U.S.C. § 1332(a) (1), federal diversity jurisdiction exists where the matter is between "citizens of different States." Since *Strawbridge v. Curtiss,* 3 Cranch 267, 2 L.Ed. 435 (1806), it has been settled law that there must be complete diversity between all plaintiffs and all defendants.

A Limited Liability Company ("**LLC**") is completely diverse from opposing parties only if *all* of the members of the **LLC**

are citizens of different states than *all* opposing parties. *See Handelsman v. Bedford Vill. Assocs. Ltd. P'ship,* 213 F.3d 48, 51 (2d Cir.2000) ("defendants Bedford Partnership and Bedford **LLC** are, for diversity purposes, citizens of Florida because both entities have Florida members"); *Receivables Exch., LLC v. Hotton,* No. 11 Civ. 0292(JS)(WDW), 2011 WL 239865, at \*1 (E.D.N.Y. Jan. 21, 2011) (explaining that, "for diversity purposes, an **LLC** is a citizen of every state that its members are citizens of" (citations omitted)); *Castillo Grand LLC v. Sheraton Operating Corp.,* No. 09 Civ. 7197(RPP), 2009 WL 4667104, at \*1 (S.D.N.Y. Dec.9, 2009) ("For purposes of assessing diversity jurisdiction, an unincorporated entity such as a partnership or a limited liability company is deemed to be a citizen of all states of which its partners or members are citizens." (citation omitted)); *cf. Carden v. Arkoma Assocs.,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) (holding that, in the context of limited partnerships, citizenship of limited partners had to be taken into account to determine diversity of citizenship among the parties).

In his recent submission to this Court, Richard Du avers that that, as of the filing of the initial Complaint on September 2, 2009, two of the original three members, Du and Luk, were both citizens of New York, while **Faust**, who is both an original member of **Dumann** and the defendant in this action, was a domiciliary of Pennsylvania. (Dkt. No. 96 ("the Du Affidavit") at ¶¶ 3, 5–6.) [1] Du states, however, that **Faust** "resigned as a member" of the **LLC** on March 18, 2009, over five months before the initial Complaint was filed. (Du Affidavit at ¶ 2.) [2] This begs the question whether **Faust** must be considered a member of **Dumann** for the purpose of determining whether the parties are completely diverse.

### III. State Law and **LLC** Membership

The question of whose citizenship constitutes part of the **LLC's** citizenship is ultimately governed by the law of the state of incorporation. This is illuminated in *CR Holding Company, LLP v. Campbell,* No. 11 Civ.2051(JWL), 2011 WL 2357649, at \*3 (D.Kan. June 3, 2011), a case whose facts are remarkably similar to this case. *Campbell* concerned a dispute between several limited partnerships and their former partner, the defendant Campbell. The sole remaining partner, Renkemeyer, was a citizen of Kansas, while Campbell was a citizen of Missouri. In his motion to dismiss for lack of subject matter jurisdiction, Campbell argued

**\*3** that diversity is not complete because [Campbell] remains a partner of each of the plaintiff entities such that the plaintiff entities are citizens of both Kansas and Missouri, thereby destroying complete diversity ... Plaintiffs, however, contend that Mr. Renkemeyer is the sole partner of each entity because Mr. Campbell has either withdrawn from the partnerships or, under the circumstances, should be deemed dissociated ....

*Id.* at \*1.

In determining whether subject matter jurisdiction existed, Judge Lungstrum looked to the Kansas state law on partner withdrawal from limited partnerships, which provided that withdrawal was impermissible unless it was provided for by the partnership agreement. *Id.* at \*2. "[B]ecause defendant is not permitted to withdraw as a limited partner of Renkemeyer Campbell LP under the agreement itself and, thus, by statute ...," Judge Lungstrum held, "defendant remains a limited partner .... That entity, then, is a citizen of both Kansas and Missouri, thereby destroying complete diversity." *Id.* at \*3. In other words, despite Campbell's attempted withdrawal, the **LLC** remained a citizen of Campbell's place of citizenship.

Though less squarely on point, *Tri–County Metropolitan Transportation District of Oregon v. Butler Block, LLC,* No. 08 Civ. 259(AA), 2008 WL 2037306 (D.Or. May 7, 2008), is also informative. In *Butler Block,* Judge Aiken wrestled with the question whether an Oregon plaintiff was completely diverse from the defendant, a parent **LLC** composed of a California citizen and a child **LLC** with one member, an Oregon citizen. The defendant **LLC** argued that its Oregon **LLC** member did not destroy complete diversity, because the child **LLC** had been administratively dissolved under Oregon law for failure to pay its fees. *Id.* at \*2. However, Judge Aiken held that neither Delaware state law [3] nor the parent **LLC** agreement permitted withdrawal of a member due to administrative dissolution. Further, "under Delaware law," as under New York law, "unless an **LLC** agreement provides otherwise, a member may not resign from a limited liability company prior to the dissolution and winding up of the limited

liability company." *Id.* at \*2 (internal quotation marks and citation omitted). Thus, even if Oregon no longer recognized the existence of the child LLC, the child LLC continued to exist under Delaware law, and the citizenship of its member destroyed diversity. *Butler Block,* then, underscores the principle laid out in *Campbell:* the law of the state of incorporation plays a central role in the determination of whether complete diversity can exist between an LLC and an opposing party.

Armed with *Campbell* and *Butler Block,* this Court can now turn to the case at hand. It is undisputed that Dumann, the LLC, was formed in New York and is governed by New York Limited Liability Company Law ("NYLLCL"). (*See* Dkt. No. 85, Ex. A ("Operating Agreement") at III § 1 ("Unless specifically set forth otherwise in the Articles of Organization or by amendment thereto, management of this Company shall be vested in the members, who shall be subject to all of the rights, duties, privileges and liabilities of the Managers, as set forth in the New York Limited Liability Company Law .") NYLLCL § 606(a) provides in relevant part:

> **\*4** A member may withdraw as a member of a limited liability company only at the time or upon the happening of events specified in the operating agreement and in accordance with the operating agreement. Notwithstanding anything to the contrary under applicable law, unless an operating agreement provides otherwise, a member may not withdraw from a limited liability company prior to the dissolution and winding up of the limited liability company.

*See also Klein v. 599 Eleventh Ave. Co.,* 14 Misc.3d 1211(A), at \*3 (N.Y.Sup.2006) (explaining that "a member may withdraw from a limited liability company only as provided in its operating agreement. If the operating agreement is silent, a member may not withdraw prior to the dissolution of the company." (citations omitted)).

The Operating Agreement contains the following rules about withdrawal:

> A member may withdraw as a member of this Company with the vote or written consent of at least two-thirds in interest of the members, other than the member who proposes to withdraw as a member. If such consent is not given, a member may withdraw upon not less than six months prior written notice to this Company, provided such withdrawal does not breach this Operating Agreement, and the New York Limited Liability Company Law or any other contractual obligation between such proposed withdrawing member and this company or its other members. Should such breach occur, then the withdrawing member may be liable for damages as a result thereof.

(Operating Agreement at III, § 10.)[4] Read together, the NYLLCL and the Operating Agreement do not permit member withdrawal, unless (1) two-thirds consent is given or (2) the withdrawal occurs after six months' notice.

Here, Faust did not obtain two-thirds consent to withdraw. Nor did he provide six months' notice before withdrawal; indeed, this is the *very basis* of Dumann's contention that Faust breached the membership agreement. (*See* Second Amended Complaint at ¶¶ 17–18.)[5] Because Faust has not withdrawn under one of the two methods enumerated in the Operating Agreement, his "resignation" from Dumann was, in short, ineffective.[6] Thus, when Plaintiffs brought this suit, Dumann's citizenship for diversity jurisdiction purposes was both New York and Pennsylvania. Pennsylvania, in other words, finds itself "on both sides of the 'v.' sign" in this matter, *Saavedra v. Boeing Co.,* 464 F.Supp.2d 770, 771 (N.D.Ill.2006), meaning that diversity of citizenship is incomplete.

The infirmity in this Court's subject matter jurisdiction over this case is a subtle one, which may explain why it has gone unnoticed throughout much of the litigation. Nevertheless, that infirmity divests this Court of the power to adjudicate this case as a matter of federal law.

## IV. Conclusion

For the foregoing reasons, this case is DISMISSED *sua sponte* for lack of subject matter jurisdiction. The Clerk of the Court is directed to terminate the case and all pending motions.

**\*5** SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 30672

---

### Footnotes

1    While the Second Amended Complaint alleges that **Dumann** has its "principal place of business" in New York State, that fact (as to an **LLC**) is entirely irrelevant to diversity jurisdiction. The Second Amended Complaint does not enumerate the citizenship of the members of **Dumann** at the time the suit was filed.

    On December 6, 2012, this Court issued an issued an Order to Show Cause why Plaintiff's Second Amended Complaint should not be dismissed for lack of subject matter jurisdiction ("the Order"). The Order directed Plaintiffs to both "enumerate every Member of the **LLC** as of the original date of this action's filing, and ... specify the *citizenship* of each Member." *Dumann Realty LLC v. Faust*, No. 09 Civ. 7651(JPO), 2012 WL 6135020, at \*1 (S.D.N.Y. Dec.6, 2012). On December 19, 2012, Plaintiffs filed an affidavit by Richard Du. On December 28, 2012, Defendant filed an affidavit by Anthony R. Molé in reply. (Dkt. No. 97 ("Molé Affidavit").)

2    As Defendant rightly notes (*see* Molé Affidavit at ¶¶ 4–7), the Du Affidavit's contention that **Faust** "resigned as a member" is problematic on its own terms. Du relies on paragraph 23 of **Faust's** Answer to the Second Amended Complaint for the proposition that **Faust** resigned from **Dumann**; however, that paragraph states not that **Faust** resigned, but that "on or about March 18, 2009, by letter, **Faust** indicated his *desire* to resign from **Dumann** and requested that **Dumann's** remaining members, Du and Luk, consent to his resignation." (Du's Affidavit, Ex. A at ¶ 23 (emphasis added).)

3    The defendant **LLC** was a Delaware **LLC** governed by Delaware law. *Id.* at \*1.

4    Moreover, the Operating Agreement "has (no) specified date of dissolution ... unless sooner dissolved pursuant to this Agreement or pursuant to the provisions of the [NYLLCL]." (*Id.* at § II, 7.)

5    As Defendant's counsel notes, this puts Plaintiff "in a situation where any argument made in an attempt to support diversity subject matter jurisdiction would be counterproductive to their claim." (Molé Affidavit at ¶ 9.)

6    Moreover, **Dumann** sued **Faust** within six month of his resignation, meaning that the period during which the Operating Agreement anticipated **Faust** to be liable for consequential damages of the breach was still in effect. This underscores that, at the time this Complaint was filed, **Faust** was a member of the **LLC** for purposes of diversity jurisdiction.

---

**End of Document**
    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue-Striped Flag

Appeal Filed by   Flores v. Carry on Trailer,   2nd Cir.,   June 15, 2026

2026 WL 1453587
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Valerie FLORES, Plaintiff,
v.
CARRY ON TRAILER, Fleet Farm, Defendants.

1:25-cv-01731 (AMN/PJE)
|
Signed May 22, 2026

**Attorneys and Law Firms**

VALERIE FLORES, P.O. Box 1110 ACP 5749, Albany, NY 12201, Plaintiff pro se

### MEMORANDUM-DECISION AND ORDER

Anne M. Nardacci, United States District Judge:

### I. INTRODUCTION

**\*1**  On December 10, 2025, plaintiff *pro se* Valerie Flores ("Plaintiff") commenced this action against defendants Carry-On Trailer and Fleet Farm ("Defendants"), alleging harm arising from a defective cargo trailer. *See* Dkt. No. 1 ("Complaint"). Plaintiff also filed a motion to proceed *in forma pauperis* ("IFP"). Dkt. No. 2. On January 21, 2026, Defendant Carry-On Trailer filed a motion to dismiss this matter. Dkt. No. 6.

This matter was referred to United States Magistrate Judge Paul J. Evangelista, who granted Plaintiff's request to proceed IFP and reviewed the Complaint pursuant to 28 U.S.C. § 1915. Dkt. No. 12 at 1 ("Report-Recommendation"). [1]  On April 30, 2026, Magistrate Judge Evangelista recommended that this Court dismiss the Complaint without leave to amend for lack of subject matter jurisdiction. *Id.* at 5-8. Magistrate Judge Evangelista also accordingly recommended that Defendant Carry-On Trailer's motion be dismissed as moot. *Id.* at 10. Pursuant to 28 U.S.C. § 636(b)(1), Magistrate Judge Evangelista advised that the parties had fourteen days within which to file written objections and that failure object to the Report-Recommendation within those fourteen days

would preclude appellate review. *Id.* at 11. No party has filed objections, and the time for filing objections has expired.

For the following reasons, the Court adopts the Report-Recommendation in its entirety.

### II. STANDARD OF REVIEW

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 229 (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition). Similarly, if an objection simply rehashes arguments originally presented to the magistrate judge, this Court reviews the relevant portions of the report-recommendation for clear error. *See id.* at 228-29 & n.6 (collecting cases). "When performing such a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.*, No. 21-cv-1138, 2023 WL 2552452, at \*1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 17-cv-367, 2017 WL 5484663, at \*1 n.1 (N.D.N.Y. Nov. 14, 2017)).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal[.]" *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920, at \*2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 22-cv-567, 2022 WL 16918287, at \*1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

**\*2** Because no party has filed any objections to the Report-Recommendation, the Court reviews the Report-Recommendation for clear error.

Magistrate Judge Evangelista recommended that the Court dismiss Plaintiff's Complaint for lack of subject matter jurisdiction. *See* Dkt. No. 12 at 5-8. A federal court has jurisdiction over a matter only when it presents a "federal question," 28 U.S.C. § 1331, or where there is "diversity of citizenship" and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332. *See Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 136 (2d Cir. 2002).* As to federal question jurisdiction, Magistrate Judge Evangelista found that Plaintiff had not raised any federal question. *Id.* at 7. Even liberally construed, Plaintiff's claim under "Consumer Law" at most invoked a state-law contract dispute. *Id.* (citing N.Y. U.C.C. § 2-314(1)). And, as to diversity jurisdiction, Magistrate Judge Evangelista found that while the Complaint adequately alleged complete diversity of citizenship between Plaintiff and Defendants, Plaintiff's requested relief—for damages amounting to a "$300.00 towing fee, six-to-eight tires, a trailer lock, a $400.00 repair fee, and 'the trailer bill of sale difference,' alleged to be $5,300.00"—fell well short the $75,000 amount-in-controversy threshold. Dkt. No. 12 at 6-7 (citing Dkt. No. 1 at 4).

Magistrate Judge Evangelista also recommended that the Court dismiss the Complaint without leave to amend. *Id.* at 7-8. Although a *pro se* plaintiff is generally afforded at least one opportunity to amend where there is any indication that he or she might state a viable claim, the opportunity to replead should be denied where the problems with the complaint are "substantive rather than the result of an inadequately or inartfully pleaded complaint." *Gerken v. Gordon,* 1:24-CV-435, 2024 WL 4608307, at *15 (N.D.N.Y. Oct. 29, 2024) (citations and internal quotation marks omitted). Here, Magistrate Judge Evangelista found that, liberally construed, the Complaint demonstrated "no plausible basis to conclude that [P]laintiff would be able to establish this Court's jurisdiction through amendment." Dkt. No. 12 at 8. Therefore,

Magistrate Judge Evangelista concluded that the opportunity to replead should be denied.

Finally, Magistrate Judge Evangelista noted that the Northern District of New York is not the proper venue for Plaintiff's claim because the events alleged in the Complaint lack any connection to the district outside of Plaintiff's own domicile. *Id.* at 8-10. And because Magistrate Judge Evangelista recommended dismissing the Complaint for lack for subject matter jurisdiction without leave to amend, he also recommended that the Court dismiss Defendant Carry-On Trailer's premature motion to dismiss as moot. *Id.* at 10.

After reviewing the Report-Recommendation and considering Magistrate Judge Evangelista's findings, the Court finds no clear error in the Report-Recommendation. Accordingly, the Court adopts the Report-Recommendation in its entirety.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 12, is **ADOPTED in its entirety**; and the Court further

**\*3 ORDERS** that Plaintiff's Complaint, Dkt. No. 1, be **DISMISSED without prejudice and without leave to amend**; and the Court further

**ORDERS** that Defendant Carry-On Trailer's motion to dismiss, Dkt. No. 6, be **DISMISSED as moot**; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2026 WL 1453587

---

### Footnotes

1    Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 1174108
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Valerie FLORES, Plaintiff,
v.
CARRY-ON TRAILER; Fleet Farm, Defendants.

No. 1:25-CV-1731 (AMN/PJE)
|
Signed 04/30/2026

**Attorneys and Law Firms**

Valerie Flores, P.O. Box 1110 ACP 5749, Albany, New York 12201, Plaintiff pro se.

### REPORT-RECOMMENDATION AND ORDER [1]

PAUL J. EVANGELISTA, UNITED STATES MAGISTRATE JUDGE

**\*1** The Clerk has sent the undersigned a complaint filed by pro se plaintiff Valerie Flores ("Plaintiff") for review. Dkt. No. 1 ("Compl."). Plaintiff has not paid the filing fee and seeks leave to proceed *in forma pauperis* ("IFP"). Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that she financially qualifies to proceed IFP. [2] Plaintiff generally alleges that defendants sold her a cargo trailer that was defective. *See generally* Compl. For the reasons set forth below, it is recommended that plaintiff's complaint be dismissed without prejudice and without leave to amend.

### I. **Initial Review**

#### A. **Legal Standards**

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3] "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him

to proceed further with his action." *Praileau v. Fischer*, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks and citation omitted). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law....

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks, citations, and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted). Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*,

550 U.S. at 570; *see Iqbal,* 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

 **\*2** "The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure."[4] *Kastner v. Tri State Eye,* No. 19-CV-10668 (CM), 2019 WL 6841952, at \*2 (S.D.N.Y. Dec. 13, 2019) (quoting *Ruotolo v. IRS,* 28 F.3d 6, 8 (2d Cir. 1994)).[5] Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex,* 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction ... and ... a demand for the relief sought ...." FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d).

Notwithstanding the liberal pleading standard afforded pro se litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking. *See Uzoefune v. Am. Auto Shield, LLC,* No. 18CV03441, 2018 WL 5624149, at \*2 (E.D.N.Y. Oct. 30, 2018)(citing *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700-01 (2d Cir. 2000)).

## II. **Discussion**

### A. **Complaint** [6]

Affording plaintiff special solicitude, she alleges that defendants Carry-On Trailer,[7] a citizen of Georgia,[8] and Fleet Farm, incorporated under the laws of the State of Wisconsin, sold her a "defective," "faulty" cargo trailer that was "overpriced." Compl. at 3. Her complaint alleges diversity of citizenship as a basis for federal court jurisdiction. *See id.* at 3. Although plaintiff does not check the box

indicating the case involves a federal question, she includes the following statement in the place on the form provided to list specifics of the federal statutes, treaties, and/or provisions of the United States Constitution that are at issue in the case:

> Consumer Law issue – I got a flat tire with the trailer when I had not even put 1,000 miles on the trailer. I felt I was sold a defective, faulty cargo trailer that was overpriced. I could go to Missouri or other States near the Midwest and pay half the price for the trailer.

*See id.* at 3.

 **\*3** Regarding the requirement to plead diversity of citizenship, plaintiff alleges that she is a citizen of New York, defendant Carry-On Trailer is headquartered or has its principal place of business in Georgia, and Fleet Farm is incorporated under the laws of Wisconsin. *See generally* Compl. In the relief section of the complaint, plaintiff seeks reimbursement for a $300.00 towing fee, six to eight trailer tires, a trailer lock, a $400.00 repair fee, and "the trailer bill of sale difference," which is the $7000.00 cost of the trailer minus $1,700.00 for which that plaintiff sold the trailer. *See* Compl. at 4, 5.

### B. **Analysis**

#### 1. **Subject Matter Jurisdiction**

42 U.S.C. § 1332 provides that district courts have subject matter jurisdiction over civil actions where the matter in controversy exceeds $75,000 *and* is between citizens of different states. *See* 28 U.S.C. § 1332(a)(1). Under § 1332, a corporation is deemed to be a citizen of its state of incorporation and the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1).

28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. "A plaintiff properly invokes § 1331 jurisdiction when he or she pleads a colorable claim 'arising under' the

Constitution or laws of the United States." *Koso v. Haegele*, No. 18CV04400, 2018 WL 6531496, at *2 (E.D.N.Y. Dec. 11, 2018), quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006).

A plaintiff's failure to plead facts that demonstrate a district court's jurisdiction warrants dismissal of the action. *See* FED. R. CIV. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative [.]"); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (holding courts have an independent obligation to examine their jurisdiction); *Manway Constr. Co., Inc. v. Housing Auth. of City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983) (noting that courts must dismiss cases sua sponte for lack of subject matter jurisdiction).

First, reliance on Section 1332, diversity of citizenship jurisdiction, fails. Plaintiff has provided that defendant Carry-On Trailer is incorporated under the Laws of Wisconsin with its principal place of business in Wisconsin. *See* Compl. at 4. She has further alleged that Carry-On Trailer is incorporated under the laws of Georgia and/or has its principal place of business in Georgia. *See id.* She provides that she is domiciled in New York. See Compl. at 1. Although plaintiff has established diversity of citizenship, she has failed to establish diversity jurisdiction because the complaint makes clear that the amount in controversy is well below the $75,000 threshold required for such jurisdiction. As indicated, plaintiff request for relief amounts to reimbursement for a $300.00 towing fee, six-to-eight tires, a trailer lock, a $400.00 repair fee, and "the trailer bill of sale difference," alleged to be $5,300.00. *See* Compl. Although plaintiff did not provide the cost of the tires and lock, it is without any reasonable doubt that such amount for these items would not reasonably rise to the required amount in controversy. Plaintiff does not allege any other damages. In all, it is clear from the face of the complaint that the amount in controversy falls far short of the $75,000.00 threshold. *See Deswert v. Travelers Commerical Ins. Co.*, No. 6:24-CV-00278 (AMN/TWD), 2025 WL 416765, at *4 (N.D.N.Y. Feb. 6, 2025) (citing *GW Holdings Grp. LLC v. U.S. Highland*, Inc., 794 F. App'x 49, 51 (2d Cir. 2019)) (holding that "there is legal certainty" that the amount in controversy does not meet the threshold of $75,000).[9] Thus, plaintiff cannot establish diversity jurisdiction.

 *4 Plaintiff also failed to allege any federal question. Even a liberal reading of her "Consumer Law issue" does not suffice. *See* Compl. at 3. Indeed, her allegations that she "felt" she was

sold a defective, faulty, or overpriced cargo trailer, does not suffice; indeed, at most, this is a state-law contract dispute. *See, e.g.*, N.Y. U.C.C. § 2-314(1). Thus, plaintiff's complaint fails to establish this Court has federal question jurisdiction.

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gerken v. Gordon*, 1:24-CV-435 (MAD/CFH) 2024 WL 4608307, at *15 (N.D.N.Y. Oct. 29, 2024) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation and internal quotation marks omitted)). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " *Id.* (citing *Edwards v. Penix*, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019)) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

In sum, plaintiff has failed to demonstrate that this Court has subject matter jurisdiction, and the undersigned has no plausible basis to conclude that plaintiff would be able to establish this Court's jurisdiction through amendment. Accordingly, it is recommended that the complaint be dismissed without prejudice and without opportunity to amend.

2. **Venue**

Venue also appears improper in this District. Venue in civil actions in federal court is governed by 28 U.S.C. § 1391(b), which provides,

[a] civil action may be brought in—

(1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Plaintiff alleges to be a citizen of New York State and provides that the defendants, corporations, are incorporated and have principal places of business outside of New York State, in Georgia and Wisconsin. *See* Compl. at 3-4. Other than plaintiff's citizenship, this action has no connection to the Northern District of New York. Although plaintiff has not indicated where she purchased the trailer, the complaint suggests that she purchased a Carry-On Trailer brand trailer at a Fleet Farm store. *See generally* Compl. The Fleet Farm website has revealed that there are no Fleet Farm stores in New York State, let alone the Northern District of New York. Thus, beyond plaintiff's domicile, this case has no connection to this District. That this District was plaintiff's choice of forum and her apparent domicile does not suffice to establish that this District is the proper venue where the incidents in question occurred outside of this District and all defendants are "citizens" of different districts. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 185 (1979) ("[I]t is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff.").

**\*5** The reason the undersigned does not seek to transfer for improper venue is because plaintiff did not provide enough information in the Complaint for the Court to determine which District would be the most appropriate transferee court (and this information is also not provided in the Motion to Dismiss, *see* dkt. no. 6). An internet search reflects what plaintiff's complaint also provides – that Fleet Farm is headquartered in Appleton, Wisconsin and Carry-On Trailer is headquartered in Lavonia, Georgia.[10] It is unclear where the sale of the trailer involved in the complaint occurred.[11]

When venue is not proper, the district court shall "dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). As plaintiff has not provided sufficient information about where the events underlying the complaint occurred – such as where she purchased the trailer – the undersigned cannot determine where venue would be most proper.[12] As the undersigned cannot ascertain which federal district court would be the proper venue over the plaintiff's claims, and because no federal district court would have subject matter jurisdiction, a transfer would not be in the interests of justice. *See generally Razzoli v. USDA*, No. 22CV7204AMDLB, 2022 WL 17852024, at \*4 (E.D.N.Y. Dec. 22, 2022).[13] Thus, the undersigned is recommending

dismissal, as indicated above, for lack of subject matter jurisdiction.

### 3. **Motion to Dismiss**

The undersigned observes that on January 21, 2026, defendant Carry-On Trailer prematurely filed a Motion to Dismiss for lack of subject matter jurisdiction, to which plaintiff opposed. *See* Dkt. Nos. 6, 11. As the undersigned recommends dismissal of this action without prejudice and without opportunity to amend, it is further recommended that the motion to dismiss be dismissed as moot. *See* Dkt. No. 6.

### III. **Conclusion**

**\*6  WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED without prejudice and without opportunity to amend** for lack of subject matter jurisdiction; and it is further

**RECOMMENDED**, that defendant Carry-On Trailer's Motion to Dismiss (Dkt. No. 6) be **DISMISSED AS MOOT**[14]; and it is further

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation & Order on all parties who have appeared in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[15]

**All Citations**

Slip Copy, 2026 WL 1174108

---

### Footnotes

1    This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

2    Plaintiff is advised that although she has been granted IFP status, she is still required to pay any fees and costs they may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

3    These requirements apply equally to non-prisoner pro se litigants. *See* N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.").

4    Hereafter, "Fed. R. Civ. P."

5    All unpublished cases cited in this Report-Recommendation and Order, have been provided to plaintiff. The undersigned does not provide a copy of *Katsner v. Tri State Eye*, as she has already been recently provided with a copy of that case in association with at least one of her other cases before this Court.

6    Plaintiff included four pages of an e-mail exchange with defendant Carry-On Trailer and a copy of a Participant Identification Card with her complaint. *See* Dkt. Nos. 1-1. These attachments have also been reviewed in connection with the initial review of plaintiff's complaint. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal quotation marks and citations omitted).

7    Plaintiff has referred to this defendant as both Carry On Trailer and Carry On Trailers. For consistency, the undersigned will refer to this defendant as Carry-On Trailer, the spelling plaintiff used in the caption of her complaint and exhibited in the e-mails attached to the complaint. *See generally* Dkt. No. 1.

8    On her fillable form complaint, plaintiff identified Carry-On Trailer as a "citizen" of the State of Georgia. *See* Compl. at 2. In light of special solicitude, and due to the nature of the form complaint, the undersigned assumes plaintiff intends to allege that Carry-On Trailer is incorporated under the laws of the State of Georgia or has its principal place of business in Georgia.

9    The undersigned does not provide a copy of this case as it just provided a copy with another of plaintiff's recent cases. *See* 1:25-cv-01730-AMN-PJE, *Flores v. Liberty Mutual Insurance, et al.*

10   "Under Section 1391(c), a 'natural person' resides in the district where the person is domiciled, and an 'entity with the capacity to sue and be sued' resides in any judicial district where it is subject to personal jurisdiction with respect to the civil action in question. *Roderick v. Joel*, No. 25-CV-5446 (LLS), 2026 WL 90041, at *4 (S.D.N.Y. Jan. 13, 2026) (quoting 28 U.S.C. § 1391(c)(1), (2)).

---

The e-mail exchange is from a customer service supervisor with an address in Lavonia, Georgia. However, there is no indication that the address is associated with the specific location where plaintiff purchased the trailer, or that it instead came from a general customer service address. *See* Dkt. No. 1-1.

Similarly, the undersigned determines that the best use of judicial resources is a not a dismissal with leave to amend so that plaintiff could provide more facts such that the Court could determine the appropriate venue for transfer. This is because the lack of subject matter jurisdiction is clear and cannot be cured, nor could any amendment plausibly establish that venue is proper in this District.

The undersigned notes that plaintiff has repeatedly commenced actions in this Court, despite it not being the proper venue. Indeed, due in part to this issue, on February 4, 2026, this Court implemented a prefiling injunction stating that plaintiff may not commence any new actions in this District without proper permission of the chief judge, as well as a revocation of her MFT privileges. *See* 1:26-pf-0001 (BKSI, *In re Valerie Flores.* As this action was commenced before the entry of that prefiling injunction, it does not apply to this case.

The undersigned observes that plaintiff never filed proof of service on this Court's docket. Further, because this Court was required, due to plaintiff's in forma pauperis application, to perform an initial review of the complaint prior to service and that service only were to proceed if the Court determined that service of the complaint is permitted, the Motion to Dismiss is premature. *See* 28 U.S.C. § 1915.

If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen-day (14) period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id.* § 6(a)(1)(c).

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

**WESTLAW**   © 2026 Thomson Reuters. No claim to original U.S. Government Works.                6

Gonzalez v. Ocwen Home Loan Servicing, Not Reported in F.Supp.3d (2015)

2015 WL 2124365
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Luis GONZALEZ and Sonia Gonzalez, Plaintiffs,
v.
OCWEN HOME LOAN SERVICING, Sand
Canyon Corporation, Dale M. Sugimoto, Fabiola
N. Camperi, Matthew A. Engel, William S. Smith,
Leopold & Associates, Option One Mortgage
Corporation, American Home Mortgage Service,
Inc., Deutsche Bank National Trust Company,
Soundview Home Loan Trust 2005–OPT3, Hunt
Leibert Jacobson PC, Benjamin T. Staskiewicz, S.
Bruce Fair, Esq., Jon Doe, Jan Doe, Hinshaw &
Culbertson, LLP, Valerie Nicole Doble, Defendants.

Civil Action No. 3:14–CV–53 (CSH).
|
Signed May 6, 2015.

**Attorneys and Law Firms**

Sonia Gonzalez, East Windsor, CT, pro se.

Valerie N. Doble, Hinshaw & Culbertson, LLP, Boston, MA,
for Defendants.

***RULING ON PLAINTIFFS' MOTION TO
REARGUE AND REQUEST FOR JUDGE
TO RECONSIDER/ARTICULATE [Doc. 15]***

HAIGHT, Senior District Judge:

### I. *INTRODUCTION*

**\*1** *Pro se* Plaintiffs Luis Gonzalez and Sonia Gonzalez
brought this action against various defendant mortgage
companies, banks, and individuals (counsel to and executives
for said mortgage companies and banks), alleging violations
of the United States Constitution and the United Nations
Declaration on the Rights of Indigenous Peoples, "banking
fraud," and conspiracy with respect to the foreclosed
mortgage of 54 Abbe Road, East Windsor, Connecticut (the
"East Windsor Property").[1] On February 25, 2015, the
Court entered an "Order of Dismissal" [Doc. 13], dismissing
Plaintiffs' action with prejudice. *See Gonzalez v. Ocwen*

*Home Loan Serv.,* 3:14–CV–53 (CSH), —— F.Supp.3d ——,
2015 WL 778432 (D.Conn. Feb. 25, 2015).[2] In particular,
the Court dismissed the action in its entirety because the
Court determined that it lacked subject matter jurisdiction
and the complaint failed to set forth any claims upon which
relief may be granted in that it contained only frivolous
or legally impossible claims.[3] 2015 WL 778432, at \*4–
11. Furthermore, the Court found that Plaintiffs failed to
serve Defendants with process (the summons and complaint),
Fed.R.Civ.P. 4(c)(1), 4(m), and failed to prosecute the
action for more than six months, Fed.R.Civ.P. 41(b), both
constituting alternative grounds for dismissal.[4] *Id.,* at \*11–
14.

### II. *DISCUSSION*

Pending before the Court is Plaintiffs' "Motion to Reargue and
Request for Judge to Reconsider/Articulate" [Doc. 15]. The
Court construes this *pro se* motion as one for reconsideration
and/or oral argument with respect to the Court's "Order
of Dismissal" of Plaintiffs' Amended Complaint [Doc. 13].
The standard for granting a motion for reconsideration "is
strict, and reconsideration will generally be denied unless the
moving party can point to controlling decisions or data that
the court overlooked—matters, in other words, that might
reasonably be expected to alter the conclusion reached by
the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257
(2d Cir.1995); *accord Mir v. Shah,* 569 F. App'x 48, 50 (2d
Cir.2014) (same). *See also Virgin Atl. Airways, Ltd. v. Nat'l
Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992), *cert.
denied,* 506 U.S. 820 (1992) ("The major grounds justifying
reconsideration are 'an intervening change of controlling law,
the availability of new evidence, or the need to correct a
clear error or prevent manifest injustice.' ") (quoting 18 C.
Wright, A. Miller & E. Cooper, *Federal Practice & Procedure*
§ 4478 at 790); *Kolel Beth Yechiel Mechil of Tartikov, Inv. v.
YLL Irrevocable Trust,* 729 F.3d 99, 104 (2d Cir.2013) (same)
(citing *Virgin Atl. Airways,* 956 F.2d at 1255).

"It is well-settled that a motion for reconsideration is 'not
a vehicle for relitigating old issues, presenting the case
under new theories, securing a rehearing on the merits, or
otherwise taking a 'second bite at the apple.' " *Driessen v.
Royal Bank Int'l,* No. 3:14–CV–01300, 2015 WL 881205,
\*1 (D.Conn. Mar. 2, 2015) (quoting *Analytical Surveys, Inc.
v. Tonga Partners, L.P.,* 684 F.3d 36, 52 (2d Cir.2012)). Put
simply, a "motion to reconsider should not be granted where

the moving party seeks solely to relitigate an issue already decided." *Weiming Chen v. Ying–Jeou Ma,* 595 F. App'x 79, 80 (2d Cir.2015) (citing *Shrader,* 70 F.3d at 257).

 **\*2** The Court has carefully reviewed Plaintiffs' submitted list of assertions in support of their motion for reconsideration. Pursuant to the Second Circuit's strict standard for reconsideration, the Court finds no adequate grounds— no controlling authority or factual information that the Court overlooked—to warrant reconsideration of its Order of Dismissal. Rather, Plaintiffs have once again set forth allegations in an attempt to challenge the validity of the state court foreclosure of the East Windsor Property, upon which Deutsche Bank, as Trustee, foreclosed the mortgage and took title to the property. The requested reconsideration and/or "reargument" (oral argument before the Court) would thus not reasonably be expected to alter the Court's ruling.

The only potentially "new" evidence or data Plaintiffs presented on their motion for reconsideration included: (1) two letters from Howard F. Pitkin ("Pitkin letters"), the Banking Commissioner for the State of Connecticut, regarding a "National Ocwen Settlement" (herein "Settlement") entered between the Consumer Financial Bureau and Ocwen Home Loan Servicing ("Ocwen") with respect to various loans serviced by Homeward Residential Holdings, LLC (previously known as American Home Mortgage Servicing, Inc. or AHMSI); and (2) a photocopy of a check from "Ocwen Borrower Payment Account QSF" payable to Luis Gonzalez for $1,168.44 (dated 12/6/2014). Doc. 15, at 4–7. The Pitkin letters indicate that they relate to a mortgage loan with respect to "54 Abbe Road, E. Windsor, CT" and inform the "Borrowers" (recipients) that they "may be eligible to receive a payment of at least $700.00 as a part of the National Ocwen Settlement" because they "had a loan serviced by Homeward Residential Holdings LLC ... and lost [their] primary residence to foreclosure between January 1, 2009 and December 31, 2012." [5]

In presenting the Pitkin letters and/or the National Settlement payment to Luis Gonzalez, Plaintiffs once again seek to challenge the state court's final judgment of foreclosure. As stated in the Order of Dismissal, pursuant to the Rooker–Feldman doctrine, this Court remains barred from reconsidering that foreclosure judgment. *See, e.g., Swiatkowski v. Bank of America, NT & SA,* 103 F. App'x 431, 432 (2d Cir.2004) (affirming district court's "holding that under the Rooker–Feldman doctrine, the [district] court lacked subject matter jurisdiction: even reading the complaint

liberally, ... [plaintiffs'] lawsuit was effectively seeking to re-litigate a judgment of foreclosure entered against them by the state court"); *Ford v. U.S. Dep't of Treasury Internal Revenue Serv.,* 50 F. App'x 490, 491 (2d Cir.2002) (affirming district court's dismissal of plaintiff's complaint for lack of subject matter jurisdiction under the Rooker–Feldman doctrine where plaintiff's claims asserted alleged fraud and the statute of limitations with respect to the state court foreclosure judgment; Second Circuit held such claims were "inextricably intertwined with the state court's underlying foreclosure judgment," so that, in "seek[ing] a declaration that the foreclosure judgment [was] void," plaintiff was effectively seeking a "reversal of the state court foreclosure judgment"); *Billie v. Aurigremma,* No. 3:13–cv–1432 (JBA), 2013 WL 6331358, at \*2 (D.Conn. Dec. 5, 2013) ("any claims contesting the validity of the state court foreclosure judgment are precluded by the Rooker–Feldman doctrine"); *Andrews v. Citimortgage, Inc.,* No. 14–CV–1534(JS)(AKT), 2015 WL 1509511, at \*5 (E.D.N.Y. Mar. 31, 2015) ("in the Second Circuit, any attack on a judgment of foreclosure is ... barred by the Rooker–Feldman doctrine") (citation omitted) (collecting cases). In addition, the Rooker–Feldman doctrine also bars challenges to the state court foreclosure judgment as "obtained fraudulently." *Vossbrinck v. Accredited Home Lenders, Inc.,* 773 F.3d 423, 427 (2d Cir.2014) (*per curiam* ).

 **\*3** In the case at bar, Plaintiffs lost in state court regarding foreclosure of their property, complain of injuries caused by that state court judgment, invite federal district court review and rejection of the state court foreclosure, and commenced this federal suit after the state court judgment was rendered. *See, e.g., McKithen v. Brown,* 481 F.3d 89, 97 (2d Cir.2007) (setting forth "four requirements for the application of Rooker–Feldman" doctrine). This Court therefore lacks subject matter jurisdiction over the present action pursuant to the Rooker–Feldman doctrine. [6]

No evidence presented by Plaintiffs for reconsideration contradicts the Court's threshold finding that it lacks subject matter jurisdiction. Absent such jurisdiction, the Court is barred from proceeding in this matter and must dismiss. *See* Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action ."). *See also Manway Constr. Co. v. Housing Auth. of Hartford,* 711 F.2d 501, 503 (2d Cir.1983) ("It is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte,* at any stage of the proceedings, may raise the question of whether the court has subject matter

jurisdiction; and, if it does not, *dismissal is mandatory.*") (emphasis added).

### III. *CONCLUSION*

In sum, Plaintiffs have presented no legal authority or new evidence which would reasonably alter the prior Order of this Court [Doc. 13], which directed dismissal of the action with prejudice. The Court therefore DENIES Plaintiffs' motion for reconsideration [Doc. 15].

It is SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 2124365

---

**Footnotes**

1    Plaintiffs also included two defendants with the generic names of "Jon Doe" and "Jan Doe." It is unclear whom Plaintiffs sought to represent with these designations.

2    The full facts and circumstances of the case are set forth in the February 25 Order, familiarity with which is assumed. *See also Gonzalez v. Option One Mortg. Corp.,* No. 3:12–CV–1470 (CSH), 2014 WL 2475893, at *1 (D.Conn. June 3, 2014) (dismissing prior federal case in which Plaintiffs also challenged foreclosure on East Windsor Property); *Gonzalez v. United States,* No. 3:13–CV–650 (CSH), 2014 WL 3738179, at *1 (D.Conn. July 29, 2014) (same).

3    With respect to lack of subject matter jurisdiction, Plaintiffs' claims presented no grounds for "federal question" jurisdiction, 28 U.S.C. § 1331; and there was also no complete "diversity of citizenship" in that Plaintiffs and multiple defendants were all citizens of Connecticut at the commencement of the action. *See* 28 U.S.C. ¶ 1332(a) ("[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is *between ... citizens of different States* ") (emphasis added).

     Plaintiffs' claims were also barred by the "Rooker–Feldman" doctrine in that Plaintiffs sought to challenge final state court judgments, which foreclosed on the East Windsor property and passed title to Deutsche Bank. *See Rooker v. Fid. Trust Co.,* 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983). For the Rooker—Feldman doctrine to apply, (1) a plaintiff must have lost in state court; (2) his injury must have been caused by a state court judgment; (3) he must have invited federal review of that state court judgment; and (4) the state court judgment must have been entered before his federal suit commenced. *McKithen v. Brown,* 481 F.3d 89, 97 (2d Cir.2007). This Court therefore lacked jurisdiction to consider Plaintiffs' claims.

4    The Court clarified that it "would ordinarily grant Plaintiffs a brief additional period within which to effect proper service before dismissing the complaint without prejudice," but "granting Plaintiffs additional time for service would be futile because their Complaint is fatally defective in that it sets forth 'frivolous' claims which cannot be remedied by amendment." 2015 WL 778432, at *12. Similarly, the Court found "no point" in providing Plaintiffs with additional days to serve the summons and complaint because the Amended Complaint "sets forth exclusively frivolous and/or legally impossible claims." *Id.,* at *13.

5    Pursuant to Federal Rule 401 of Evidence, the Court takes judicial notice of the "Consent Judgment" which gave rise to the National Ocwen Settlement payments. *See Consumer Fin. Protection Bureau v. Ocwen Fin., Corp.,* No. 1:13–cv–2025 (RMC) (D.D.C. Feb. 26, 2014), Doc. 12. Pursuant to Exhibit B of that judgment, "[t]he purposes of the payments ... are remedial and relate to the reduction in the proceeds deemed realized by borrowers for tax purposes from the foreclosure sale of residential properties owned

Case 6:25-cv-01151-BKS-ML   Document 15   Filed 06/24/26   Page 51 of 71

by the borrowers allegedly resulting from the allegedly unlawful conduct of Ocwen." *Id.,* Doc. 12–2, at ¶ 7. *See also* https:// nationalocwensettlement.com (website for National Settlement, declaring that the Consent Judgment addresses Ocwen's alleged "misconduct during the mortgage servicing process.") (visited May 4, 2015). It thus follows that the letters presented by Plaintiffs do not indicate that foreclosure on the East Windsor Property was wrongful or invalid. Rather, they address possible errors in mortgage servicing by Ocwen or its subsidiaries. Either reading of the letters, however, does not alter the Court's finding that any such challenge to the state court foreclosure judgment is barred by the Rooker–Feldman doctrine.

6   The Court also notes that Plaintiffs have presented no data that the Court overlooked in finding that neither "federal question" nor "diversity of citizenship" subject matter jurisdiction exists in this action. *See* 28 U.S.C. §§ 1331, 1332(a), respectively.

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 2857156
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Felipe PEREZ, Plaintiff,
v.
E. BRYANT, et al., Defendants.

20-CV-0079 (CM)
|
Signed 06/02/2020

**Attorneys and Law Firms**

Felipe Perez, Ossining, NY, pro se.

ORDER

COLLEEN McMAHON, Chief United States District Judge:

**\*1** Plaintiff brings this action *pro se.* By order dated January 8, 2020, the Court directed Plaintiff, who was then incarcerated in Sing Sing Correctional Facility, to either pay the $400 in fees required to bring a civil action in this Court, or, to proceed *in forma pauperis* (IFP), that is, without prepayment of fees, to submit an IFP application and a prisoner authorization. Because Plaintiff failed to file an IFP application and prisoner authorization or pay the fees, by order dated February 24, 2020, the Court dismissed the complaint without prejudice. *See* 28 U.S.C. §§ 1914, 1915. On May 7, 2020, the Court received a letter from Plaintiff indicating that he is no longer incarcerated and providing his new address. (ECF No. 7.) His submission also included an IFP application and prisoner authorization. (ECF Nos. 5, 6.)

Accordingly, the Court directs the Clerk of Court to vacate the February 24, 2020 order and judgment (ECF Nos. 3, 4), and to reopen this action.

**A. Order Directing Amended IFP Application**

Plaintiff proceeds *pro se* and was incarcerated in Sing Sing Correctional Facility when he filed this action. A plaintiff who qualifies under the Prison Litigation Reform Act (PLRA) as a prisoner when he files a complaint faces certain restrictions. [1] *See Gibson v. City Municipality of N.Y.*, 692 F.3d 198, 201 (2d Cir. 2012) ("[T]he relevant time at which a person must be 'a prisoner' within the meaning of the PLRA in order for

the Act's restrictions to apply is 'the moment the plaintiff files his complaint.' ") (citation omitted). A prisoner proceeding IFP, for example: (1) must pay the $350.00 filing fee in installments withdrawn from his prison trust fund account, 28 U.S.C. § 1915(b)(1), and (2) can be disqualified from proceeding IFP, that is, without prepaying the filing fee, if he has previously filed three federal civil actions (or appeals), while he was a prisoner, that were dismissed as frivolous, malicious, or for failure to state a claim on which relief may be granted, 28 U.S.C. § 1915(g) (the "three strikes" rule). [2]

Plaintiff was incarcerated at the time he filed the complaint in this action, but he did not submit an IFP application and prisoner authorization or pay the relevant filing fees to commence this action. The Court therefore dismissed the complaint without prejudice. Plaintiff now files an IFP application and prisoner authorization, but he is no longer incarcerated. Upon a prisoner's release, "his obligation to pay fees is to be determined, like any non-prisoner, solely by whether he qualifies for [IFP] status." *McGann v. Comm'r of Social Security*, 96 F.3d 28, 30 (1996). "A released prisoner may litigate without further prepayment of fees upon satisfying the poverty affidavit requirement applicable to all non-prisoners." *Id.*

**\*2** Because Plaintiff is no longer in the custody of the New York State Department of Corrections and Community Supervision, his financial situation may have changed. The Court therefore directs that if Plaintiff wishes to prosecute this action and proceed IFP, he must submit an amended IFP application within thirty days. Alternatively, Plaintiff may prepay $400.00 in relevant fees, which includes the $350.00 filing fee and a $50.00 administrative fee that applies to litigants who are not proceeding IFP. If Plaintiff fails to comply with this order within the time allowed, the action will be dismissed for failure to comply with this order, without prejudice to Plaintiff's refiling the action.

Even if Plaintiff's release means that he "may litigate without further prepayment of fees," *id.*, his release does not change the fact that if he qualified as a prisoner at the time that he filed this action, then dismissal of this action for failure to state a claim, or as frivolous or malicious, could qualify as a strike for purposes of § 1915(g).

Plaintiff must notify the Court in writing if his address changes, and the Court may dismiss the action if Plaintiff fails to do so. Under Rule 41(b) of the Federal Rules of Civil Procedure, a district court may dismiss an action *sua sponte*

Perez v. Bryant, Not Reported in Fed. Supp. (2020)

Case 6:25-cv-01151-BKS-ML Document 15 Filed 06/24/26 Page 53 of 71

for failure to prosecute after notifying the plaintiff. *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001); see *Fields v. Beem*, No. 13-CV-0005 (GTS)(DEP), 2013 WL 3872834, at *2 (N.D.N.Y. July 24, 2013) ("A plaintiff is required to notify the Court when his address changes, and failure to do so is sufficient to justify dismissal of a plaintiff's complaint.") (collecting cases).

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket.

The Clerk of Court is further directed to vacate the Court's February 24, 2020 order and judgment (ECF Nos. 3, 4), and to reopen this action.

The Court directs Plaintiff to submit an amended IFP application or pay the $400 in fees required to bring a civil action in this Court, within thirty days.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Attachment

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

[Full name(s) of the plaintiff or petitioner applying (each person must submit a separate application]

-against-

CV ( ) ( )
(Enter case number and initials of assigned judges, if available; if filing this with your complaint, you will not yet have a case number or assigned judges.)

[Full name(s) of the defendant(s)/respondent(s).]

**AMENDED**
**APPLICATION TO PROCEED WITHOUT PREPAYING FEES OR COSTS**

I am a plaintiff/petitioner in this case and declare that I am unable to pay the costs of these proceedings and I believe that I am entitled to the relief requested in this action. In support of this application to proceed *in forma pauperis* ("IFP") (without prepaying fees or costs), I declare that the responses below are true:

1. *Are you incarcerated?* ☐ Yes ☐ No (If "No," go to Question 2.)
   I am being held at: _____

   Do you receive any payment from this institution? ☐ Yes ☐ No
   Monthly amount: _____
   If I am a prisoner, *see* 28 U.S.C. § 1915(h), I have attached to this document a "Prisoner Authorization" directing the facility where I am incarcerated to deduct the filing fee from my account in installments and to send to the Court certified copies of my account statements for the past six months. *See* 28 U.S.C. § 1915(a)(2), (b). I understand that this means that I will be required to pay the full filing fee.

2. Are you presently employed? ☐ Yes ☐ No
   If "yes," my employer's name and address are:

   Gross monthly pay or wages: _____
   If "no," what was your last date of employment? _____
   Gross monthly wages at the time: _____

3. In addition to your income stated above (which you should not repeat here), have you or anyone else living at the same residence as you received more than $200 in the past 12 months from any of the following sources? Check all that apply.
   (a) Business, profession, or other self-employment ☐ Yes ☐ No
   (b) Rent payments, interest, or dividends ☐ Yes ☐ No

   SDNY Rev: 12/12/2014

   (c) Pension, annuity, or life insurance payments ☐ Yes ☐ No
   (d) Disability or worker's compensation payments ☐ Yes ☐ No
   (e) Gifts or inheritances ☐ Yes ☐ No
   (f) Any other public benefits (unemployment, social security, food stamps, veteran's, etc.) ☐ Yes ☐ No
   (g) Any other sources ☐ Yes ☐ No
   If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.

   If you answered "No" to all of the questions above, explain how you are paying your expenses:

4. How much money do you have in cash or in a checking, savings, or inmate account?

5. Do you own any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value, including any item of value held in someone else's name? If so, describe the property and its approximate value:

6. Do you have any housing, transportation, utilities, or loan payments, or other regular monthly expenses? If so, describe and provide the amount of the monthly expense:

7. List all people who are dependent on you for support, your relationship with each person, and how much you contribute to their support (only provide initials for minors under 18):

8. Do you have any debts or financial obligations not described above? If so, describe the amounts owed and to whom they are payable:

*Declaration*: I declare under penalty of perjury that the above information is true. I understand that a false statement may result in a dismissal of my claims.

Dated _____          Signature _____

Name (Last, First, MI) _____   Prison Identification # (if incarcerated) _____

Address _____ City _____ State _____ Zip Code _____

Telephone Number _____   E-mail Address (if available) _____

IFP Application, page 2

Perez v. Bryant, Not Reported in Fed. Supp. (2020)

Case 6:25-cv-01151-BKS-ML   Document 15   Filed 06/24/26   Page 54 of 71

**All Citations**

Not Reported in Fed. Supp., 2020 WL 2857156

---

## Footnotes

1       Under the PLRA, a prisoner is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or [a] diversionary program." 28 U.S.C. § 1915(h).

2       A plaintiff who was a prisoner at the time of filing the complaint is also required to have exhausted prison grievance remedies, 28 U.S.C. § 1997e(a).

---

**End of Document**                              © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Perkins v. Rome Memorial Hospital, Not Reported in Fed. Supp. (2021)

Case 6:25-cv-01151-BKS-ML    Document 15    Filed 06/24/26    Page 55 of 71

2021 WL 1549987
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Victor PERKINS, Plaintiff,
v.
ROME MEMORIAL HOSPITAL, and
Doctor Mitchell R. Rubinovich, Defendants.

6:20-CV-0196 (NAM/ATB)
|
Signed 04/19/2021

**Attorneys and Law Firms**

Victor Perkins, Catholic Charities, 1355 New York Avenue NE, Washington, DC 20002, Plaintiff Pro Se.

Andrew R. Borelli, Esq., Gale Gale & Hunt, LLC, P.O. Box 6527, Syracuse, NY 13217, Attorneys for Defendant Rome Memorial Hospital.

Kostas D. Leris, Esq., Office of the Attorney General of the State of New York, The Capitol, Albany, NY 12224, Attorneys for Defendant R. Mitchell Rubinovich, M.D..

**MEMORANDUM-DECISION AND ORDER**

Norman A. Mordue, Senior United States District Court Judge:

**I. INTRODUCTION**

**\*1**  Plaintiff Victor Perkins brings this action against Defendants under 42 U.S.C. § 1983 and New York State law alleging claims related to a medical procedure at Rome Memorial Hospital on November 16, 2009. (Dkt. No. 47). Defendants Rome Memorial Hospital and Robert Mitchell Rubinovich, M.D. ("Dr. Rubinovich") now move to dismiss the Amended Complaint. (Dkt. Nos. 55, 58). Plaintiff seeks an Order denying Defendants' motions. (Dkt. No. 63).

**II. HISTORY**

Plaintiff commenced this action on February 24, 2020, and in April of that year Defendants moved for judgment on the pleadings. (Dkt. Nos. 16, 18). In a decision dated November 5, 2020, the Court granted Defendants' motions, finding that Plaintiff's claims were untimely and failed to state a claim for which relief could be granted. (Dkt. No. 46). However, in light of Plaintiff's *pro se* status, the Court dismissed the Complaint without prejudice and granted leave to amend. (*Id.*).

**III. BACKGROUND**

In the Amended Complaint, Plaintiff alleges that over the course of a decade, Rome Memorial Hospital and Dr. Rubinovich denied him "the right to know or have reasons to know of the harm caused to him" by "falsifying the diagnosis, treatment, and prognosis of [his] injuries." (Dkt. No. 47, p. 2). First, Plaintiff alleges that he was injured during an assault at Great Meadow Correctional Facility on November 7, 2009. (*Id.*, p. 3). On November 16, 2009, Plaintiff was taken to Rome Memorial Hospital and operated on by Dr. Rubinovich, who allegedly "performed ankle replacement surgery on the plaintiff's lower left extremity." (*Id.*). According to the Operative Report, Dr. Rubinovich performed an "open reduction and internal fixation" wherein the "medial malleolus was reduced anatomically, was helped provisional with two K-wires and then two 4-0 cannulated screws were drilled across using washers to compress the fracture site." (Dkt. No. 47-1, p. 1). Plaintiff alleges that this account is false, and that his "medial malleolus bone was removed" and the hardware placed in his ankle consisted of two screws, two washers, a plate, and pins. (Dkt. No. 47, p. 3). In addition to the Operative Report, Plaintiff also attached to the Amended Complaint: nurse's notes, x-rays, photographs of his foot/ankle, requests for medical records, and correspondence regarding his prison grievances. (Dkt. No. 47-1, pp. 3–24).

Plaintiff alleges that on December 24, 2009, he saw Dr. Rubinovich again for removal of his cast. (Dkt. No. 47, p. 3). Plaintiff alleges that Dr. Rubinovich informed him that "screws, washers, plate, and pins" had been placed in Plaintiff's ankle. (*Id.*). Plaintiff claims that he asked Dr. Rubinovich where the screws were located, and Dr. Rubinovich "indicat[ed] the screws were placed in his talus bone." (*Id.*). Next, Plaintiff alleges that on September 14, 2010, he was seen by an orthopedist who showed him a "false image of his ankle." (*Id.*). Plaintiff alleges that the orthopedist reviewed Plaintiff's operative report and confirmed that the screws were placed in Plaintiff's talus bone, "not his medial malleolus as false shown in x-ray and falsely mentioned in medical records." (*Id.*). Plaintiff alleges that on December 10, 2010, he saw another doctor at Elmira Correctional Facility, who confirmed that his medial malleolus bone was surgically removed on November 16, 2009. (*Id.*).

Case 6:25-cv-01151-BKS-ML Document 15 Filed 06/24/26 Page 56 of 71

Perkins v. Rome Memorial Hospital, Not Reported in Fed. Supp. (2021)

**\*2** On September 23, 2012, Plaintiff submitted a grievance to his facility regarding allegedly "false medical records" which did not disclose all the hardware that had been placed in his ankle. (Dkt. No. 47-1, p. 13). Plaintiff alleges that as of October 13, 2012, he "discovered in push down on what appeared to be his medial malleolus bone ... that he suffered injuries other than described in the operative report." (Dkt. No. 47, p. 4). On October 16, 2012, Plaintiff alleges that he submitted a grievance to his facility regarding the discovery of his injuries, and that he received "false" medical records in response, which inaccurately described the hardware in his ankle. (*Id.*). Specifically, the grievance stated that Plaintiff had come to the conclusion that his "medial malleolus bone was surgically removed." (Dkt. No. 47-1, p. 10). Plaintiff complained that "for three years I've been told through medical reports and show[n] through x-rays that my medial malleolus is still in my ankle when it has been removed." (*Id.*).

Next, Plaintiff alleges that on April 25, 2016, he wrote to Rome Memorial Hospital and in response, the hospital "continued in denying [him] the right to know of injuries in sending a CD Disc as of 5/12/16 that contained a false misrepresentation of the injuries he suffered on 11/7/2009." (Dkt. No. 47, p. 4). Plaintiff alleges that on October 20, 2017, an x-ray was taken at Highland Hospital which "was no different from the false image the defendant(s) have displayed and administered plaintiff from 2009 to 2020." (*Id.*). Plaintiff also claims that on May 18, 2018, an x-ray was taken at Strong Memorial Hospital, which again showed a "false image of his injuries." (*Id.*). Plaintiff alleges that on May 6, 2020, another x-ray was taken at George Washington University Hospital, which showed a "false image of his injuries." (*Id.*).

## IV. STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.' " *Mayor & City Council of Balt. v. Citigroup, Inc.,* 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly,* 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.,* 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007)). The Court's review is limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## V. DISCUSSION

Plaintiff alleges a Section 1983 claim for violation of his constitutional rights via theories of deliberate indifference and due process, as well as state law tort claims for fraud, negligence, and intentional infliction of emotional distress. (Dkt. No. 47). In moving to dismiss, Defendants argue that: 1) Plaintiff's claims are time-barred; and 2) Plaintiff has failed to state a claim upon which relief can be granted. (Dkt. No. 55-2; Dkt. No. 58-1).

### 1) Statute of Limitations

The limitations period for a Section 1983 action in New York State is three years from the date of accrual. *See Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir. 2002). Federal law determines when a Section 1983 cause of action accrues. *See id.* at 80. Ordinarily, the date of accrual is when the plaintiff knew or had reason to know of his injury. *See Keating v. Carey,* 706 F.3d 377, 382 (2d Cir. 1983).

In some cases, late-filed claims may nonetheless proceed based on equitable tolling, which applies in rare and exceptional circumstances in which "a plaintiff has been prevented in some extraordinary way from exercising his rights." *Pearl,* 296 F.3d at 85 (internal quotation marks omitted). "One such exceptional circumstance occurs when the plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant." *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003). Another exception to the general rule is the continuing wrong doctrine, which means that "certain wrongs are considered to be continuing wrongs, and the statute of limitations, therefore, runs from the commission of the last wrongful act." *Leonhard v. United States,* 633 F.2d 599, 613 (2d Cir. 1980) (citation omitted).

**\*3** Here, Plaintiff's claims arise from an alleged injury over ten years ago—the ankle surgery performed by Dr. Rubinovich at Rome Memorial Hospital on November 16, 2009. (Dkt. No. 47). The question is thus when Plaintiff knew or had reason to know about the alleged injury, i.e. that his "medial malleolus bone was removed" and screws and a plate were affixed to his talus bone. (*Id.*). Although Plaintiff claims that Defendants have continued to misinform him of the diagnosis, treatment, and prognosis of his injuries,

his allegations show that he was aware of the nature of his injury as early as December 24, 2009, when Dr. Rubinovich informed him that "screws, washers, plate, and pins" had been placed in his ankle and Dr. Rubinovich "indicat[ed] the screws were placed in his talus bone." (Dkt. No. 47, p. 3). Plaintiff further alleges that, on September 14, 2010, an orthopedist told him that screws had been placed in his talus bone, not the medial malleolus bone. (*Id.*). And Plaintiff filed two prison grievances in 2012 which claimed that he received "false medical records" relating to his surgery, and that his "medial malleolus bone was surgically removed." (Dkt. No. 47-1, pp. 10, 13).

Based on these facts, Plaintiff's Section 1983 claim would be untimely because he commenced this action on February 24, 2020, nearly ten years after discovering his injury and well beyond the three-year statute of limitations. Plaintiff argues that he "unaware of his injury, due to the state and defendant(s) on record denying him the full extent or severity of his injuries." (Dkt. No. 63-1, p. 9). But Plaintiff admits that he was informed in 2009 and 2010 that his medial malleolus bone was removed, and that hardware was placed in his ankle. (*Id.*). And Plaintiff displayed that knowledge in 2012 by filing grievances about "false medical records." Based on Plaintiff's allegations, there is no factual basis to find that, until the last few years, Defendants prevented Plaintiff from discovering the basis for his claims. Indeed, Plaintiff does not allege that Defendants were involved in the "false" x-rays taken in 2017, 2018, and 2020. (Dkt. No. 47, p. 4). Thus, equitable tolling cannot save Plaintiff's Section 1983 claim. *See Gustafson v. Bell A. Corp.*, 171 F. Supp. 2d 311, 323 (S.D.N.Y. 2001) (finding that equitable tolling did not apply where the plaintiff "knew the *facts* that would comprise a cause of action") (emphasis in original).

As to the continuing wrong doctrine, Plaintiff alleges that the statute of limitations should be "tolled to the last date on which a wrongful act is committed." (Dkt. No. 47, p. 5; Dkt. No. 63-1, p. 10). Plaintiff alleges that a wrongful act was committed as recently as May 6, 2020, when an x-ray taken at George Washington University Hospital also showed a "false image of his injuries." (*Id.*). However, that alleged wrong was not committed by Defendants. The last alleged wrong attributed to Defendants in the Amended Complaint is when, on May 12, 2016, Rome Memorial Hospital sent Plaintiff a CD that "contained a false misrepresentation of the injuries he suffered on 11/7/2009." (*Id.*, p. 4). Using this date, Plaintiff's Section 1983 claim (commenced February 24, 2020) would still fall outside the three-year time limit.

In sum, even assuming that Plaintiff's allegations are true, he has not provided a factual basis that can save his claim using the continuing wrong doctrine. Thus, his Section 1983 claim is untimely and must be dismissed. *See Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009) (affirming the district court's finding that the continuing violation doctrine did not apply to the plaintiff's claims because the plaintiff "did not allege any specific acts of deliberate indifference within the three-year period prior to the filing of the complaint").

Plaintiff's state law claims must be dismissed for the same reason. In general, the statutes of limitations under New York State law for fraud, negligence, and intentional infliction of emotional distress are respectively two years, two years and six months, and one year from the date of discovery. (*See* Dkt. No. 16-15, pp. 20–26) (citing relevant New York State law). Because Plaintiff has not alleged any factual basis for triggering the statute of limitations within these time periods (as opposed to December 2009, September 2010, or at the latest May 2016), his state law claims are time-barred.

**2) Section 1983 Claim**

**\*4** Further, Defendants argue that even if Plaintiff's Section 1983 claim is not time-barred, he has failed to state a claim upon which relief can be granted. Specifically, Defendants contend that Plaintiff has not alleged any facts to plausibly infer that they acted under color of state law, in as much as Rome Memorial Hospital is a private entity (with Dr. Rubinovich in its employ), which merely provided Plaintiff with medical treatment. (*See* Dkt. No. 55-2, p. 15).

In general, "to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *W. v. Atkins*, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* (quotation and citation omitted). "Private parties are not proper defendants in a Section 1983 action unless the private parties were acting under color of state law." *Jae Soog Lee v. L. Office of Kim & Bae, PC*, 530 F. App'x 9, at \*9 (2d Cir. 2013). "A private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

Case 6:25-cv-01151-BKS-ML     Document 15     Filed 06/24/26     Page 58 of 71

Perkins v. Rome Memorial Hospital, Not Reported in Fed. Supp. (2021)

Here, Plaintiff alleges a Section 1983 claim for deliberate indifference and due process, all relating to the surgery in November 2009 and follow-up treatment by Rome Memorial Hospital and Dr. Rubinovich. (Dkt. No. 47). The Court previously noted that "in order to plead a plausible Section 1983 claim against the Defendants, Plaintiff must specifically identify a relationship between them and a state actor." (Dkt. No. 46, p. 10). The Court found that "[b]ecause Plaintiff has not pled specific facts to plausibly link Defendants to a state actor via joint activity, conspiracy, or any other theory, his Section 1983 claim must be dismissed." (*Id.*). Although the Court granted Plaintiff the opportunity to bolster his allegations, the Amended Complaint suffers from the same defect.

Plaintiff's opposition papers state that Defendants' actions "were at the state's direct benefit and at their specific behest." (Dkt. No. 63-1, p. 11). Plaintiff adds that Defendants were under contract to provide services to prison inmates. (*Id.*). But even if these allegations were properly pled, Plaintiff's claim would fall short. Plaintiff's theory appears to be that Defendants conspired with Great Meadow Correctional Facility to deprive him of his constitutional rights. To plead this sort of claim, he must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324–25. Similarly, a Section 1983 claim asserting joint activity must allege "specific facts tending to show agreement and concerted action." *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012) (citation omitted). Here, Plaintiff's conclusory allegations do not suggest any agreement between Defendants and Great Meadow Correctional Facility, beyond a simple contract to provide medical services. There are no alleged facts to plausibly infer a coordinated plan to deprive Plaintiff of his rights. Indeed, Plaintiff's allegations amount to pure speculation about a wide-ranging, decade-long conspiracy, which apparently also includes four non-defendant hospitals. (*See* Dkt. No. 47, p. 4).

**\*5** As the Court has observed, "the gist of Plaintiff's case is a garden variety state law medical malpractice claim, one which has no business in federal court." (Dkt. No. 46, p. 9). Nothing in the Amended Complaint indicates otherwise. Accordingly, Plaintiff's Section 1983 claim is subject to dismissal for this reason as well. *See also McGugan v. Aldana-Bernier*, 752 F.3d 224, 230–31 (2d Cir. 2014) (affirming dismissal of the plaintiff's Section 1983 claim against private hospital absent allegations of state action); *Ciambriello*, 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.").

## VI. LEAVE TO AMEND

Finally, Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Court has already granted Plaintiff leave to amend once, directing that he must provide additional factual, non-conclusory allegations to state a timely claim and raise a right to relief above the speculative level. Plaintiff has failed to do so. Therefore, the Court concludes that permitting further amendment would be futile.

## VII. CONCLUSION

For these reasons, it is

**ORDERED** that Defendant Rome Memorial Hospital's Motion to Dismiss (Dkt. No. 55) is **GRANTED**; and it is further

**ORDERED** that Defendant Dr. Rubinovich's Motion to Dismiss (Dkt. No. 58) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Request for an Order Denying Defendants' Motions (Dkt. No. 63) is **DENIED;** and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 47) is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1549987

Case 6:25-cv-01151-BKS-ML     Document 15     Filed 06/24/26     Page 59 of 71

**Perkins v. Rome Memorial Hospital, Not Reported in Fed. Supp. (2021)**

**End of Document**                              © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 35074
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
E.D. New York.

Harry Edmond REAVES, Plaintiff,

v.

DEPARTMENT OF VETERANS AFFAIRS (Secretary Nicholas); the New York City Department of Homeless Services (Commissioner Hess); the Salvation Army; and Senator Hillary Rodham Clinton, Defendants.

No. 08–CV–1624 (RJD).
|
Jan. 6, 2009.
|
As Corrected Jan. 14, 2009.

**Attorneys and Law Firms**

Harry Edmond Reaves, Long Island City, NY, pro se.

### MEMORANDUM AND ORDER

DEARIE, Chief Judge.

**\*1** By Order dated July 21, 2008, the Court granted *pro se* plaintiff Harry Edmond Reaves leave to amend his complaint, originally filed in the United States District Court for the Southern District of New York on July 17, 2007 and transferred to this Court on April 14, 2008. Plaintiff filed an amended complaint on August 20, 2008. The amended complaint fails to cure the deficiencies in the prior complaint and is hereby dismissed.

### BACKGROUND

The original Complaint expressed plaintiff's frustration with the provision of housing for homeless veterans in New York City, and requested an explanation from the Veterans Administration ("V.A.") and the City of New York regarding the implementation of programs and services for himself and other homeless veterans. As neither the United States Constitution nor any of the statutes or regulations regarding veterans of the United States armed services establish any fundamental right to public housing or emergency shelter,

plaintiff's original complaint failed to state a claim or establish the subject-matter jurisdiction of the federal court. Liberally construing the complaint, the Court found that plaintiff's concern with being "treated fairly" and receiving "fair housing" might suggest a cognizable claim under 42 U.S.C. § 1983, or the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* Accordingly, the Court granted leave to amend the complaint.

Plaintiff filed an amended complaint, but it merely reiterates his concerns about the housing programs administered by the City of New York and the V.A. Plaintiff does not suggest that his ineligibility for these programs is a result of invidious or discriminatory treatment or another deprivation of his civil rights that could trigger the protections established under § 1983 and the Fair Housing Act.

The amended complaint adds several new claims over which this Court also does not have subject matter jurisdiction, including vague allegations regarding the adoption of his children, his advocacy of the war in Iraq and assistance to President George W. Bush, and his belief that he is being followed by unknown individuals and former President Bill Clinton.

Plaintiff further alleges that "on or about 3/23 or 3/24 I was brutally assulted [*sic* ] at the Borden Avenue Veteran's Residence by the Security being provided by the Salvation Army under contract." (Amended Complaint at 14.) He claims that after this alleged assault, he was left lying in a pool of blood and that he woke up the next night in Elmhurst Hospital. (*Id.*)

### DISCUSSION

#### I. Standard of Review

Title 28, Section 1915(e)(2)(B) of the United States Code requires a district court to dismiss a case if the court determines that the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). However, a *pro se* plaintiff's submissions are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Indeed, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe,* 174

F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 878, 790 (2d Cir.1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend the complaint. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000); *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999).

## II. *Section 1983*

**\*2** In order to maintain a § 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a *person* acting under color of state law." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994) (emphasis added). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.*

**\*3** Purely private conduct is not actionable under § 1983, "no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (quotations omitted.) However, the under-color-of-state-law requirement can be applied to private individuals in certain limited circumstances, such as where the private individual is engaged in a "public function" or performs conduct that is "fairly attributable to the state." *Id.*, 526 U.S. at 51, 119 S.Ct. 977. The public function exception is narrow. The Supreme Court has made clear that "the relevant question is not simply whether a private group is serving a 'public function.' ... [T]he question is whether the function performed has been 'traditionally the *exclusive* prerogative of the State.' " *Rendell–Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 353, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)).

A private entity does not become a state actor merely by performing under a state contract. *Rendell–Baker,* 457 U.S. at 841, 102 S.Ct. 2764 ("Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."). Moreover, "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." *Jackson,* 419 U.S. at 350, 95 S.Ct. 449.

## III. *Failure to State a Claim*

The amended complaint fail to state a claim under § 1983 or the Fair Housing Act. No constitutional rights are implicated by plaintiff's concerns regarding his homelessness or the New York City or federal policies regarding homeless veterans. His allegations regarding the alleged assault at the Borden Avenue Veterans Residence could be construed as a claim for excessive use of force. However, plaintiff does not allege that any of the named federal of City officials were responsible for the alleged assault. Instead, he asserts that he was assaulted by "security being provided by the Salvation Army under contract." (Amended Complaint at 14.) None of these individuals are named in the caption of the complaint or amended complaint. The Court has considered granting plaintiff leave to further amend his complaint to name these individuals, but such an amendment would be futile because the security personnel are not state actors who could be subject to a § 1983 action.

The Salvation Army is a private organization, and its staff members are not "state actors." Even if Plaintiff intends to assert that the Borden Avenue shelter and the alleged perpetrators of the assault were "under contract" with the City of New York, he cannot show that the shelter or the organization are performing a public function sufficient to turn the shelter or its employees into state actors for purposes of § 1983 liability. Access to food and shelter is not a constitutional right, nor is there any government obligation to provide adequate housing. *Lindsey v. Normet,* 405 U.S. 56, 74, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972). New York City has chosen to provide homeless services, and City and state agencies regulate housing conditions and facilitate access to housing. But "[t]hat legislative policy choice in no way makes these services the exclusive province of the State." *Rendell–Baker,* 457 U.S. at 842, 102 S.Ct. 2764. Accordingly, the provision of homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors. *See Id.* ("That a private entity performs a function which serves the public does not make its acts state action."); *Stone v. New York City Dep't of Homeless Servs.,* No. 04 CV 2885(NG), slip op. at 17 (E.D.N.Y. January 21, 2005) (dismissing § 1983 claim against the Salvation Army because "[t]he provision of food and shelter to the homeless is hardly an exclusive prerogative of the State"), *aff'd* 159 Fed.Appx. 324 (2d Cir.2005); *Williams v. Crawford,* No. 88 CV 0080(TCP), 1988 WL 52198, at \*2 (E.D.N.Y. May 13, 1988) (state regulation and state funding would be insufficient to make the Salvation Army's Brooklyn Rehabilitation Center or its employees state actors under § 1983); *Vargas v. Salvation Army,* 649 F.Supp. 763, 768 (N.D.Ill.1986) (concluding that the Salvation Army did not

Case 6:25-cv-01151-BKS-ML    Document 15    Filed 06/24/26    Page 62 of 71

perform a public function in caring for the sick and elderly, even when operating under the regulation and control of the state). As plaintiff offers no other facts to support a finding of § 1983 liability against the security officers at the Salvation Army's Borden Avenue Veteran's Residence, it would be futile to further amend the complaint in order to name these individuals.

### CONCLUSION

None of plaintiff's renewed claims regarding temporary housing nor any of the new allegations in the amended complaint state a claim on which relief may be granted. Accordingly, the amended complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 35074

---

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag

Distinguished by [Gurevitch v. Emerald Green Property Owners Association, Inc.,](#) S.D.N.Y., February 27, 2025

2018 WL 4185705
Only the Westlaw citation is currently available.
<u>For Online Publication Only</u>
United States District Court, E.D. New York.

Nicholas TALLEY, Donna Evans Talley, Plaintiffs,

v.

LOANCARE SERVICING, DIV. OF
FNF, Selene Finance, Defendants.

15-CV-5017 (JMA) (AKT)
|
Signed 08/31/2018

**Attorneys and Law Firms**

Donna Evans Talley, Nicholas Talley, pro se.

[Stuart L. Kossar, Esq.](#), Knuckles, Komosinski & Manfro, LLP, 565 Taxter Road, Suite 590, Elmsford, New York 10523, Attorney for Defendant Selene Finance, LP.

[Edward Rugino](#), Rosicki, Rosicki and Associates, P.C., 51 East Bethpage Road, Plainview, New York 11803, Attorney for Defendant LoanCare Servicing.

<u>**MEMORANDUM AND ORDER**</u>

[Joan M. Azrack](#), United States District Judge

**\*1** On August 18, 2015, Donna Evans Talley and Nicholas Talley (together "plaintiffs" or the "Talleys") filed a *pro se* complaint in this Court against Selene Financing ("Selene") and LoanCare Servicing, Division of FNF ("LoanCare") (together "defendants"). On January 21, 2016, the Court granted plaintiffs' applications to proceed *in forma pauperis*, but dismissed the complaint *sua sponte* pursuant to [28 U.S.C. § 1915(e)(2)(B)(ii)](#). Plaintiffs were given an opportunity to file an amended complaint. On February 16, 2016, plaintiffs filed an amended complaint, which seeks, among other things, injunctive relief to "[s]top illegal and fraudulent foreclosure." (Am. Compl. at 4.) Simultaneous with the filing of the amended complaint, plaintiffs filed an Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order seeking to enjoin LoanCare from pursuing

a foreclosure sale scheduled for March 3, 2016. In an Order dated February 24, 2016, this Court, *sua sponte* dismissed, pursuant to [28 U.S.C. § 1915(e)(2)(B)(ii)](#), the prayer for injunctive relief in plaintiffs' amended complaint and denied plaintiffs' request for a preliminary injunction and temporary restraining order. Before the Court are defendants' motions to dismiss the amended complaint pursuant to [Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)](#). For the reasons stated below, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety.

**I. BACKGROUND**

The following facts are taken from plaintiffs' amended complaint, the record before the Court and fillings from the foreclosure action. In deciding a motion to dismiss under [Rule 12(b)(6)](#), the Court may take judicial notice of public records, including state court filings. [Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004)](#). The Court can also consider exhibits —such as copies of the mortgage and mortgage assignments —which are attached or integral to the amended complaint. [Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004)](#).

**A. <u>The Bay Shore Mortgage</u>**
On March 7, 2009, Nicholas Talley and Donna Evans Talley executed a mortgage in favor of non-party Lend America (the lender) in the principal sum of $311,558 concerning a property located at 22 Lakeland Street, Bay Shore, New York ("the Bay Shore property"). (Am. Compl., ECF No. 7 at 15-16.) Plaintiffs claim that there was no recording of the original title or delivery of the mortgage or deed to plaintiffs. (<u>Id.</u> at 5.) Plaintiffs further allege that Lend America became defunct in December of 2009 and that no assignments of the mortgage occurred prior to 2012. (<u>Id.</u>) By way of an endorsement to the note and two assignments of the mortgage, the loan instruments were transferred to defendant LoanCare on February 27, 2012. (<u>Id.</u> at 5, 8-12.) The assignment to LoanCare was recorded on April 10, 2012 in the Suffolk County Clerk's Office. (<u>Id.</u> at 5.) On March 31, 2015, LoanCare assigned the mortgage to defendant Selene. (<u>Id.</u> at 24-25.)

**B. <u>The Foreclosure Proceeding</u>**
**\*2** Plaintiffs defaulted on the note and mortgage by failing to make their monthly payment due in January 2011 and each month thereafter. (Kossar Decl. Ex. J, ECF No. 42-11

Case 6:25-cv-01151-BKS-ML    Document 15    Filed 06/24/26    Page 64 of 71

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

at 3.) As a result, LoanCare commenced an action against plaintiffs in New York State Supreme Court, Suffolk County on March 19, 2012. (Id.) In the Talleys' verified joint answer, they admitted their default in payments but requested a judicially mandated loan modification. (Id. at 8.) The state court denied the Talleys' request, noting that after numerous prior attempts the parties had not been able to reach an agreement to modify the loan or settle the action. (Id.) The Talleys also asserted fifteen affirmative defenses, alleging, among other things: lack of personal jurisdiction; lack of standing and legal capacity; fraud in connection with the origination and the servicing of the loan; lack of good faith with respect to a loan modification; and LoanCare's failure to state a cause of action, mitigate damages and comply with the provisions of Real Property Actions and Proceedings Law and Banking Law. (Id. at 3.) LoanCare moved for summary judgment against the Talleys seeking to strike their answer and dismiss their affirmative defenses amongst other relief. (Id.) The Talleys opposed the motion and cross moved for summary judgment seeking dismissal of the complaint on the grounds that LoanCare lacked standing. (Id. at 4.)

In an Order dated April 11, 2014, the state court denied the Talleys' cross motion for summary judgment in its entirety. (Id.) In response to the Talleys' lack of standing defense, the court found that, "as holder of the endorsed note and as the assignee of the mortgage, [LoanCare] ha[d] standing to commence [the foreclosure] action. (Id. at 5.) The court noted that LoanCare demonstrated that it had been in "continuous possession of the note and mortgage since February 27, 2012," concluding that LoanCare "is the transferee and holder of the original note as well as the assignee of the mortgage by virtue of the written assignments." (Id. at 6.) In sum, the court held that LoanCare satisfied its *prima facie* burden as to the merits of the foreclosure action as it produced the endorsed note, the mortgage and assignments as well as evidence of plaintiffs' nonpayment. (Id. at 5.) Further, the court noted that LoanCare submitted proof of its compliance with the notice requirements of the RPAPL § 1303 and § 1304. (Id.) Thus, the court found that LoanCare established its entitlement to summary judgement and dismissed the Talleys' remaining affirmative defenses finding that plaintiff submitted sufficient proof to establish, *prima facie*, that such defenses were unmeritorious. (Id. at 5, 7-9) (noting that circumstances of fraud must be "stated in detail" and that a defense based upon the "doctrine of unclean hands" lacks merit where a defendant fails to come forward with admissible evidence of immoral or unconscionable behavior). The court also noted that the Talleys "failed to demonstrate that they made a reasonable

attempt to discover the facts which would give rise to a triable issue of fact or that further discovery might lead to relevant evidence." (Id. at 8.) The court further rejected the Talleys' contention that they were entitled to a judicially mandated loan modification and ordered the appointment of a referee to compute amounts due under the subject note and mortgage. (Id. at 8, 9.)

On September 29, 2014, the state court entered final judgment for foreclosure and sale of the Bay Shore property. (Kossar Decl. Ex. K, ECF No. 42-12 at 3-8.) The state court further ordered that LoanCare was entitled to judgment establishing the validity of the mortgage and to recover $390,013.50 with interest to date of the closing of time of the referee's sale of the subject property. (Id.)

**C. The Instant Action**

Plaintiffs' amended complaint alleges fraud against defendants LoanCare and Selene along with other claims under: (1) the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, § 2608; (2) federal regulation 24 C.F.R. § 203.350 [1] associated with the National Housing Act, 12 U.S.C. § 1701; (3) various provisions of the Uniform Commercial Code ("UCC"); (4) the Pooling and Servicing Agreement ("PSA") that governs plaintiffs' mortgage; and (5) fraud. [2] (Amend. Compl.) Though stated somewhat differently, plaintiffs' amended complaint appears to reiterate their contentions from the prior state court foreclosure action, specifically alleging that LoanCare did not have standing to foreclose on the Bay Shore property and that the mortgage and its assignment to LoanCare, and subsequently to Selene, were invalid and therefore unenforceable. [3] (See Am. Compl.)

 **\*3** Specifically, plaintiffs allege that the original deed has never been delivered since the inception of the mortgage. (Id. at 3.) Plaintiffs claim that although the original lender, Lend America ceased to exist as of December 2009, the mortgage was never assigned in the years 2009 through 2012. (Id.) Plaintiffs allege that Lend America "acquired the loan without providing principal/issuer resulting in no securitization of an FHA security instrument from 2009-2012." (Id.) Plaintiffs appear to allege that "no delivery of deed and title" concerning plaintiffs' mortgage "proves deceptive practices and fraud was the intention from the origination of the mortgage." (Id.) Plaintiffs further allege that defendants have no standing under Article III of the Constitution because the original title was not recorded or delivered to plaintiffs. (Id. at 5-6.) Finally, plaintiffs allege that "even if this was a legal foreclosure,

we were not given our due process because we were not notified by LoanCare or the Court of our Right to Appeal thereby denying us 'due process'." [4] (Id. at 6.) Specifically, plaintiffs allege that they did not receive the Notice of Entry of Final Judgment for Foreclosure and Sale from LoanCare until February 6, 2015 and that the September 29, 2014 judgment is in violation of the PSA, RESPA and the UCC because the mortgage and note were transferred to Selene on August 1, 2014. [5] (Id.)

Plaintiffs seek the following relief: "[d]efendants produce orig[inal] deed of mortgage, title with covenants"; "[r]eimburse[ment] [of] $4,336 for services not rendered (deed/title)"; "[p]rove securitization of mortgage from 2009 to present"; "[p]roduce chain of assignment"; "[e]xplain no recordation of closing documents"; "[r]eveal identity of principal/issuer"; "LoanCare cease and desist from harassing us and placing us under duress since the mortgage has been sold to Selene"; "[s]top illegal and fraudulent foreclosure by prior servicer, LoanCare without assignment." (Id. at 4.)

Defendants filed separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), claiming that plaintiffs' claims should be dismissed because (a) they are barred by the *Rooker-Feldman* doctrine; (b) are barred by the doctrines of *res judicata* and collateral estoppel; and (c) fail to state a claim upon which relief can be granted. [6]

## II. DISCUSSION

### A. Standard of review

The court is mindful that when considering a motion to dismiss a *pro se* complaint, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). "However, mere conclusions of law or unwarranted deductions need not be accepted." Bobrowsky, 777 F. Supp. 2d at 703 (internal quotation marks and citations omitted).

#### 1. Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires the dismissal of a claim when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). However, the Court should not draw inferences favorable to the party asserting jurisdiction. Id. In resolving a jurisdictional issue, the Court may consider affidavits and other materials beyond the pleadings, but may not rely on mere conclusions or hearsay statements contained therein. J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004); see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89, n. 8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) ... does not convert the motion into a motion for summary judgment under Rule 56.").

#### 2. Fed. R. Civ. P. 12(b)(6)

**\*4** To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Motions to dismiss invoking *res judicata* and collateral estoppel are properly brought under Rule 12(b)(6). See Hirsch v. Desmond, No. 08–CV–2660, 2010 WL 3937303, at *2 (E.D.N.Y. Sept. 30, 2010) (collateral estoppel); Wiercinski v. Mangia 57, Inc., No. 09–CV–4413, 2010 WL 2681168, at *1 (E.D.N.Y. July 2, 2010) (*res judicata* ).

### B. *Rooker-Feldman* Doctrine

Defendants' initial argument is that this Court lacks jurisdiction to hear this case under the *Rooker-Feldman* doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) (holding that only the Supreme Court can entertain a direct appeal from a state court judgment); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483, n.3 (1983) (finding that federal courts do not have jurisdiction over claims which are "inextricably intertwined" with prior state court determinations). The *Rooker-Feldman* doctrine

Case 6:25-cv-01151-BKS-ML    Document 15    Filed 06/24/26    Page 66 of 71

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

"recognizes that 'federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.' " Alston v. Sebelius, CV 13-4537, 2014 U.S. Dist. LEXIS 123613, at *23-24 (E.D.N.Y. July 31, 2014) (report and recommendation), adopted by, 2014 U.S. Dist. LEXIS 122970, 2014 WL 4374644 (E.D.N.Y. Sept. 2, 2014) (quoting Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005) ). "The doctrine applies when a litigant seeks to reverse or modify a state court judgment or asserts claims that are 'inextricably intertwined' with state court determinations." Park v. City of N.Y., No. 99–Civ–2981, 2003 WL 133232, at *7 (S.D.N.Y. Jan. 16, 2003) (citations omitted). The doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

The Second Circuit has established four requirements that must be satisfied for the *Rooker–Feldman* doctrine to apply: (1) "the federal-court plaintiff must have lost in state court;" (2) "the plaintiff must complain of injuries caused by a state court judgment;" (3) "the plaintiff must invite district court review and rejection of the judgment;" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock, 422 F.3d at 85 (internal quotation marks and citations omitted). The first and fourth requirements are procedural and the second and third are substantive. Id.

Specifically, with respect to foreclosure proceedings, "courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine." Ashby v. Polinsky, No. 06–CV–6778, 2007 WL 608268, at *1 (E.D.N.Y. Feb. 22, 2007) (internal quotation marks and citation omitted), aff'd, 328 F. App'x 20 (2d Cir. 2009); see also Done v. Wells Fargo Bank, N.A., No. 08–CV–3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009); Ward v. Bankers Trust Co. of California, N.A., No. 09–CV–1943, 2011 WL 1322205, at *5 (E.D.N.Y. Mar. 29, 2011). This even includes challenges to a judgment of foreclosure that was allegedly procured by fraud, as plaintiffs have alleged herein. See, e.g., Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 164–65 (E.D.N.Y. 2010) aff'd, 446 F. App'x 360, 361 (2d Cir. 2011) (finding *Rooker–Feldman* doctrine applied to allegations that defendants engaged in a pattern of submitting fraudulent and perjurious documents related to the judgment of foreclosure and sale in other courts and that the

allegations and relief sought were "inextricably intertwined with the state court judgment and would require overturning the state court judgment"); Parra v. Greenpoint Mortgage Co., No. Civ.A. 01–CV–02010, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) ("The fact that [a] plaintiff alleges that a state court judgment was procured by fraud does not remove [the] claims from the ambit of *Rooker–Feldman*"); Dockery v. Cullen & Dykman, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000) (same).

**\*5** In the instant case, *Rooker-Feldman* bars plaintiffs' claims. The procedural requirements of *Rooker–Feldman* are satisfied. First, plaintiffs lost in state court. (Kossar Decl. Exs. J, K.) Second, the state court granted LoanCare summary judgment and denied plaintiffs' cross-motion for summary judgment by Order dated April 9, 2014, and issued a foreclosure judgment on September 29, 2014. (See id.) Since those judgments predate the August 18, 2015 filing of the initial complaint in the instant action, (see Compl., ECF 1), all pertinent state-court decisions were issued before the proceedings in this Court commenced.

The substantive requirements of *Rooker–Feldman* are also satisfied because plaintiffs' amended complaint seeks review and rejection of those state court decisions. Plaintiffs' claims complain of injuries, including, "deceptive practices and fraud" at the origination of the mortgage due to no delivery or recording of closing documents and seeks to "[s]top illegal and fraudulent foreclosure," in contravention of the state court judgment of foreclosure and the state court's acceptance of the validity of the mortgage documents that formed the basis for that judgement. (Am. Compl. at 4-6.) See Trakansook v. Astoria Fed. Sav. & Loan Ass'n, No. 06–Civ–1640, 2007 WL 1160433, at *5 (E.D.N.Y. Apr. 18, 2007), aff'd, No. 07–2224–CV, 2008 WL 4962990 (2d Cir. Nov. 21, 2008) (holding that because plaintiff's complaint asked the court "to vacate the judgment of foreclosure and sale and award her title to the property, it [was] plain that she [was] inviting [the] court to 'reject' the [state court] order."); Done v. Option One Mortgage, No. 09–civ–4770, 2011 WL 1260820, at *6 (E.D.N.Y. Mar. 30, 2011) (concluding substantive requirements of *Rooker-Feldman* met where "[a]lthough plaintiff ha[d] made a cursory reference to seeking monetary damages, it [was] abundantly clear that the whole purpose of th[e] action [was] to undo the foreclosure judgment").

In their amended complaint, plaintiffs contend that LoanCare had no standing to bring the state court foreclosure action. (See Am. Compl.) However, as plaintiffs admit, the state

Case 6:25-cv-01151-BKS-ML    Document 15    Filed 06/24/26    Page 67 of 71

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

court rejected this exact contention in its final judgment. (Pls.' Supplemental Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 43 at 4; Kossar Decl. Ex. J at 7 ("The assertions by the defendant mortgagors as to the plaintiff's alleged lack of standing, which rest, *inter alia*, upon alleged defects in the assignments, rife with speculation, are rejected as unmeritorious ...").) In opposition to defendants' motion to dismiss, plaintiffs specifically state that they are seeking "[r]escission of [f]inal [s]ummary [j]udgment", that this Court "[r]ender the lien unenforceable due to fraudulent concealment", and seek "[d]ismissal of the [f]oreclosure due to lack of [s]tanding." (Pls.' Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 39-12.) Plaintiffs are requesting this Court to do exactly what *Rooker-Feldman* forbids— to overturn the New York Supreme Court judgment of foreclosure. See Trakansook, 2007 WL 1160433, at *5 ("Because [plaintiff's] complaint asks this court to vacate the judgment of foreclosure and sale and award her title to the property, it is plain that she is inviting this court to 'reject' the [state court order]."). A ruling in plaintiffs' favor "would effectively declare the state court judgment [of foreclosure] fraudulently procured and thus void, ... which is precisely the result that the *Rooker–Feldman* doctrine seeks to avoid." Kropelnicki v. Siegel, 290 F.3d 118, 129 (2d Cir. 2002).

Moreover, plaintiffs' attempt to thwart application of *Rooker-Feldman* by labeling their claims as "fraud in the inducement" and "fraudulent concealment" rather than the "fraud" they alleged in the state action fails. Plaintiffs' claim of "newly discovered facts of fraud in the inducement" based on the actions of third parties at the time of the loan origination fails to preclude application of *Rooker-Feldman*.[7] (Pls.' Opp. to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Plaintiffs' claims relate not to defendants' conduct in the course of the state court foreclosure action, but, rather, to the validity of the underlying mortgage documents and defendants' standing to commence the foreclosure proceeding. Thus, "the injury complained of is the judgment permitting the foreclosure, which implicitly held that the mortgage[ ] w[as] valid." Webster v. Wells Fargo Bank, N.A., No. 08–civ–10145, 2009 WL 5178654, at *8 (S.D.N.Y. Dec. 23, 2009), aff'd sub nom. as amended (Jan. 24, 2012) Webster v. Penzetta, 458 F. App'x 23 (2d Cir. 2012) (finding the Court "plainly lack[ed] subject matter jurisdiction" over plaintiff's claims "attacking the validity of the foreclosure proceedings and the validity of the underlying mortgage loan documents" pursuant to *Rooker-Feldman* because "the injury complained of is the judgment permitting foreclosure, which implicitly held that the mortgages were valid."); see also Feliciano v.

U.S. Bank Nat. Ass'n, No. 13–CV–5555, 2014 WL 2945798, at *2–4 & n. 7 (S.D.N.Y. June 27, 2014) (finding that plaintiffs' claims that "[defendant] wrongfully foreclosed upon their home because it lacked the legal capacity to accept the assignment of the underlying mortgage, and therefore lacked standing in the Foreclosure Action" failed under *Rooker-Feldman* and the fraud exception did not apply because "the complaint alleges fraudulent conduct (generally) by defendant prior to the institution of the Foreclosure Action rather than on the state court itself." (internal citations and quotations omitted) ). Therefore, plaintiffs attempt to invoke a fraudulent procurement exception to the *Rooker–Feldman* doctrine fails.

**\*6** Accordingly, the Court lacks subject matter jurisdiction over plaintiffs' claims and the amended complaint should be dismissed in its entirety.

## C. *Res judicata*

Alternatively, to the extent the *Rooker-Feldman* doctrine does not deprive the Court of subject matter jurisdiction, all of plaintiffs' claims are barred by the doctrine of *res judicata.* Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999) (quotation omitted). "In applying the doctrine of *res judicata*, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." Burka v. New York City Transit Auth., 32 F.3d 654, 657 (2d Cir. 1994). Further, federal courts must apply the doctrine of *res judicata* according to the rules of the state from which the judgment is taken. See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996); Giardina v. Nassau Cnty., No. 08–CV–2007, 2010 WL 1850793, at *3 (E.D.N.Y. May 7, 2010). New York State courts apply a transactional analysis, "barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Burka, 32 F.3d at 657 (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ); see Done, 2009 WL 2959619, at *3 (same).

*Res judicata* applies when there was: (1) a previous action that resulted in a final adjudication on the merits, (2) the party against whom *res judicata* is to be invoked was party to the previous action or in privity with a party to that action, and (3) the claims involved in the current case were, or could have been, raised in the previous action. Swiatkowski, 745

Case 6:25-cv-01151-BKS-ML    Document 15    Filed 06/24/26    Page 68 of 71

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

F. Supp. 2d at 171 (quoting Whelton v. Educ. Credit Mgmt. Corp., 432 F.3d 150, 155 (2d Cir. 2005) ). *Res judicata* applies to defenses that could have been raised in the prior action as well. Waldman v. Vill. of Kiryas Joel, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) (*res judicata* "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided") (quoting Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) ); Robbins v. Growney, 229 A.D.2d 356, 645 N.Y.S.2d 791, 792 (N.Y. App. Div. [1st] Dep't 1996) ("The doctrine of *res judicata* is applicable ... to defenses raised in the prior action or which, though not raised, could have been.") (internal citation omitted). "All litigants, including *pro se* plaintiffs, are bound by the principles of *res judicata.* Done, 2009 WL 2959619, at *3.

Here, plaintiffs' claims are barred from further adjudication by *res judicata.* First, the judgment of foreclosure entered against plaintiffs is an adjudication on the merits, which prevents reconsideration of any claim that is based on the same facts as the foreclosure judgment and which would disturb LoanCare's (or Selene's) ability to enforce rights provided pursuant to the mortgage and the note securing the Bay Shore property. See id. at *4. Second, the facts pled by plaintiffs in their amended complaint—that LoanCare brought the foreclosure suit in the Suffolk County Supreme Court and was not the holder of a valid mortgage note at the time of assignment, (see Am. Compl.)—would have been central to deciding any entitlement to a judgment of foreclosure, and thus demonstrates that their claims in the current suit arise from the same transaction as LoanCare's claim in the previous foreclosure action. Done, 2009 WL 2959619, at *4. Plaintiffs' claims arising from the origination of the mortgage and attacking the ability of defendants to enforce it in the foreclosure proceedings, (see Am. Compl.), not only could have been raised as a defense to foreclosure in the state court, but were actually raised, (see Kossar Decl. Exs. I, J) and therefore cannot be relitigated in this Court. See, e.g., Hinds v. Option One Mortg. Corp., No. 11–CV–6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) (report & recommendation), adopted by 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013) ("Inasmuch as Plaintiff's fraud claim is premised on his allegations that Defendants obtained the underlying mortgage through predatory lending tactics and fraud, *res judicata* operates to preclude federal review of such a claim ... [since the plaintiff's claims] arise from the same factual grouping—namely the validity of Plaintiff's mortgage, and the right of Defendants to enforce that agreement in a state court foreclosure proceeding"): Solomon v. Ocwen Loan

Servicing, LLC, No. 12-CV-2856, 2013 WL 1715878, at *5 (E.D.N.Y. Apr. 12, 2013) ("The state-law claims asserted by plaintiff arise from the origination of the [m]ortgage and attack the ability of defendants to enforce it in the foreclosure proceedings. These claims could have been raised as a defense to foreclosure in state court, and therefore cannot be relitigated in a subsequent suit in federal court."); Swiatkowski, 745 F. Supp. 2d at 171 ("Many of the factual allegations plaintiff raises in opposition to the instant motion to dismiss involve issues that could have been raised as claims or defenses in the state court [foreclosure] proceedings."); Gray v. Americredit Fin. Servs., Inc., No. 07 Civ. 4039, 2009 WL 1787710, at *6 n. 2 (S.D.N.Y. June 23, 2009) ("Plaintiff's allegations of fraud regarding the underlying loan transaction do not appear to be of the type recognized by certain courts as immune from *res judicata.*"); Yeiser v. GMAC Mortg. Corp., 535 F.Supp.2d 413, 421 (S.D.N.Y. 2008) ("According to New York law, ... *res judicata* ... applies to defenses that could have been litigated, including defenses to a foreclosure.").

*7 Whether cast as violations of RESPA, or regulations governing the National Housing Act, plaintiffs effectively allege that defendants improperly obtained the foreclosure judgment due to lack of standing based on fraud or "fraud in the inducement". (See Am. Compl.) However, plaintiffs asserted these claims, *albeit* in different form, in the state foreclosure action as affirmative defenses in their verified answer, in their opposition to LoanCare's summary judgment motion, and in support of their own cross motion for summary judgment. (Kossar Decl. Exs. I, J.) Specifically, in the state action, plaintiffs alleged that LoanCare had no standing to bring a foreclosure action, had "unclean hands," and misled, overcharged and defrauded plaintiffs in the mortgage application, closing and servicing process. (Id., Ex. I at ¶¶ 3, 8, 14, 18) The state court considered and ultimately dismissed plaintiffs' affirmative defenses and denied plaintiffs' summary judgment; instead, granting summary judgment in LoanCare's favor. (Kossar Decl. Ex. J.) "If plaintiffs were unhappy with the result of that proceeding, the proper recourse was a state court appeal. Because plaintiffs could have presented the same claims they now assert, including the RESPA claim, as defenses or counterclaims in the action for foreclosure, the doctrine of *res judicata* bars this litigation." Yeiser, 535 F. Supp. 2d at 422 (citing 12 U.S.C. § 2614, which authorizes an action, pursuant to the provisions of RESPA, to be brought in the federal district court or in any other court of competent jurisdiction in which the property involved is located, or where the violation is alleged to have occurred); Mercado v. Playa Realty Corp., No. CV 03-3427, 2005 WL 1594306, at

*7 (E.D.N.Y. July 7, 2005) (determining that because plaintiff could have asserted the new claims she was raising in her federal action during the foreclosure action as counterclaims and the relief sought by plaintiff was inconsistent with the ruling in the foreclosure action, the new claims were barred by the doctrine of *res judicata*). [8]

Lastly, the present action satisfies the privity requirement for claim preclusion since LoanCare commenced the foreclosure proceeding and is a named party to the current action. Further, Selene, a non-party to the earlier state court action may still invoke claim preclusion if it can demonstrate that it was in privity with a party to the earlier action. See Houdet v. U.S. Tennis Ass'n, No. 13-CV-5131, 2014 WL 6804109, at *4 (E.D.N.Y. Dec. 3, 2014) (finding *res judicata* to apply "not just to the parties in a prior litigation but also to those in privity with them" where the "new defendants have a sufficiently close relationship to justify [its] application" (internal quotation marks omitted) ). "A relationship of privity 'includes those who are successors to a property interest, those who control an action although not formal parties to it, [and] those whose interests are represented by a party to the action.' " Modular Devices, Inc. v. Alcatel Alenia Space Espana, No. 08-CV-1441, 2010 WL 3236779, at *4 (E.D.N.Y. Aug. 12, 2010) (quoting Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997) ). Under New York law, both the party servicing the mortgage and the party that later acquires it (becoming a successor in interest) are considered to be in privity with the party to the original action concerning the mortgage for purposes of *res judicata*. Yeiser, 535 F. Supp. 2d at 423.

The facts alleged in the amended complaint establish privity between Selene and LoanCare, as LoanCare assigned the mortgage to Selene on March 31, 2015—after final judgment in the state foreclosure action. See Yeiser, 535 F. Supp. 2d at 423 ("[s]ince the loan was transferred to GRP in May 2005," almost one year after the state foreclosure action, "GRP is a successor to that interest and is also in privity with [the original note holder]," which was the plaintiff in the foreclosure litigation); Hinds, 2012 WL 6827477, at *4 n.8 (finding the privity requirement satisfied where Wells Fargo was not a party in the state court proceeding, but bought the subject property at a foreclosure sale, rendering it a successor in interest). Thus, the requirements of *res judicata* are satisfied here.

Therefore, to the extent *Rooker-Feldman* does not deprive this Court of subject matter jurisdiction over plaintiffs' claims, the claims are barred by the doctrine of *res judicata* and must be dismissed.

**D. Collateral Estoppel**

Plaintiffs' claims are also precluded under the narrower doctrine of collateral estoppel. "Collateral estoppel, or issue preclusion, 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ... whether or not the tribunals or causes of action are the same.' " Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). Whether relitigation of an issue is precluded is determined by the rules of the court that rendered the prior judgment. Id. "Under New York law, the doctrine of collateral estoppel requires that 'the issue in the second action [be] identical to an issue which was raised, necessarily decided and material in the first action.' " Hines v. HSBC Bank USA, No. 15-CV-3082, 2016 WL 5716749, at *9 (E.D.N.Y. Sept. 30, 2016) (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999) ). Thus, "[b]efore collateral estoppel can be invoked, the court must find that an identical issue was necessarily decided in the prior action and is decisive of the present action, and that there was a full and fair opportunity to contest the decision now said to be controlling." Yeiser, 535 F. Supp. 2d at 424 (internal citation omitted).

*8 "To determine whether the issue in the first litigation was necessarily decided, the focus is on the rights, questions or facts that underlie a judicial decision, not the legal theories underlying the complaint." Id. at 424-25 (citing Coveal v. Consumer Home Mortgage, Inc., 2005 WL 2708388, at *5 (E.D.N.Y. Oct. 21, 2005) ) "New York requires only that the issue have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." Id. (finding collateral estoppel to be applicable where all the facts giving rise to the amended complaint were presented in the foreclosure proceeding even though plaintiffs did not allege all of the same causes of action).

Here, plaintiffs had a full and fair opportunity to litigate the factual issues raised in the amended complaint in the state foreclosure action. And, those issues were decided in LoanCare's favor. As discussed *supra*, plaintiffs already challenged the validity of the assignment of the mortgage to LoanCare and its standing to foreclose on the Bay Shore property in state court, and the state court necessarily rejected those arguments when it found LoanCare had a valid claim to the Bay Shore property and entered judgment of foreclosure on that property. No appeal was filed in that

Case 6:25-cv-01151-BKS-ML    Document 15    Filed 06/24/26    Page 70 of 71

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

action. Accordingly, plaintiffs cannot relitigate these issues against defendant LoanCare in federal court. See Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 505–06 (S.D.N.Y. 2016).

Plaintiffs are also precluded from litigating these same issues against Selene, despite the fact that Selene was not a party to the initial suit in state court. See Jasper v. Sony Music Entm't, Inc., 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) ("By binding the plaintiff to earlier judicial decisions in which he was a party, defensive collateral estoppel precludes a plaintiff from getting a second bite at the apple merely by choosing a new adversary."); see also Fequiere v. Tribeca Lending, No. 14-CV-812, 2016 WL 1057000, at *9–10 (E.D.N.Y. Mar. 11, 2016) (applying defensive non-mutual collateral estoppel to FDCPA claim).

Accordingly, the Court grants defendants' motions to dismiss plaintiffs' claims because they are precluded pursuant to the doctrine of collateral estoppel. [9]

### E. Sanctions

Pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), defendant LoanCare seeks to impose sanctions on plaintiffs in the form of attorneys' fees incurred in defendant's defense of the instant action. (Def. LoanCare's Mot. to Dismiss, ECF No. 39-7 at 19-20.) For the reasons discussed below, defendant's motion is denied.

As an initial matter, the Court notes that LoanCare has not satisfied the procedural requirements for filing a sanctions motion. Rule 11 requires that a motion for sanctions "be made separately from any other motion and ... describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). In any event, the Court denies LoanCare's motion for sanctions. Plaintiffs' claims against defendants are plainly without merit. Nevertheless, this alone does not warrant sanctions, particularly as plaintiff is proceeding *pro se*. Although Rule 11 does apply to *pro se* litigants, the court may take into account the "special circumstances of litigants who are untutored in the law," Maduakolam v. Columbia

Univ., 866 F.2d 53, 56 (2d Cir. 1989), as well as whether such a litigant has been warned of the possible imposition of sanctions. See Kuntz v. Pardo, 160 B.R. 35, 40 (S.D.N.Y. 1993); see also Fed. R. Civ. P. 11 advisory committee's note to the 1993 amendments (stating that the court should consider, *inter alia*, whether the motion was made in bad faith). There are no facts indicating that plaintiff instituted or maintained this lawsuit in bad faith or that they were warned of the imposition of sanctions. For all of the above reasons, LoanCare's request for sanctions is denied.

### F. Leave to Amend

**\*9** *Pro se* plaintiffs are ordinarily given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation omitted). Nevertheless, "a district court may deny a *pro se* plaintiff leave to amend when amendment would be futile." Boddie v. N.Y. State Div. of Parole, No. 08-CV-911, 2009 WL 1033786, at *5 (E.D.N.Y. Apr. 17, 2009).

Here, the Court has carefully considered whether plaintiffs should be granted leave to amend the complaint. Having decided plaintiffs' claims are barred by *Rooker-Feldman, res judicata* and collateral estoppel, the Court finds that any amendment of these claims would be futile. For these reasons, the Court declines to grant plaintiffs leave to amend.

### III. CONCLUSION

For the reasons stated above, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety. The Clerk of Court is directed to close this case and send a copy of this Order to *pro se* plaintiffs.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4185705

---

**Footnotes**

Plaintiffs also allege a violation of 24 C.F.R. § 203.35 in their amended complaint, (Am. Compl. at 5), but note in their opposition to defendant LoanCare's motion to dismiss that this was an error. (Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 3.)

Though the amended complaint seeks relief from "LoanCare harassing us and placing us under duress" (Am. Compl. at 5-6), the only allegation of such harassment appears in plaintiffs' opposition to defendant LoanCare's motion to dismiss. (See Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 5-6.) A plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss", K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013). In any event, plaintiff's conclusory assertions of harassment are insufficient to state any plausible claims.

The Court notes that plaintiffs appear to use the terms "fraud", "fraudulent concealment" and "fraud in the inducement" interchangeably.

To the extent that plaintiffs attempt to allege a due process violation under 42 U.S.C. § 1983, such claim is unwarranted as the defendants are private parties, not state actors.

According to the loan transfer documents attached to plaintiffs' amended complaint, the mortgage and note were transferred to Selene on March 31, 2015. (See Am. Compl. at 23-24.) However, Selene first became involved with plaintiffs' loan when it became a servicer of the loan on August 1, 2014. (Pls.' Opp. to Def. LoanCare's Mot. to Dismiss, ECF No. 35-1, Ex. H at 17.)

Plaintiffs filed for Chapter 13 bankruptcy on June 5, 2017. (Pls.' Opp. to Mot. to Dismiss, Ex. J, ECF No. 35 at 37.)

Plaintiffs appear to allege newly discovered facts in relation to the alleged fraudulent closing of the mortgage in 2009. (Pls.' Opp to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Specifically, plaintiffs now argue, in conclusory fashion, that at the time of the closing of their mortgage in 2009, the Title Company was a "shell company" and the attorney at the closing table was fraudulent. (Id.)

"Although New York's permissive counterclaim rule means that res judicata generally will not necessarily bar claims that could have been counterclaims in a prior action, this exception for counterclaims does not permit an attack on a judgment" previously issued by the state court. Beckford v. Citibank N.A., No. 00 Civ. 205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000) (internal quotation omitted).

Because plaintiffs' claims fail under *Rooker-Feldman, res judicata* and collateral estoppel, the Court need not reach the defendants' alternative arguments in support of dismissal.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---